Simon Appeal.

Argued December 1, 1961; reargued April 24, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Kenneth P. Simon,* for appellant.

*C. Francis Fischer,* and *Brenlove & Fischer,* for appellee.

*Joseph P. Flanagan, Jr., Hugh A. A. Sargent, Oscar M. Hansen, Michael B. Wray, William H. Markus, Anderson Page, Michael L. Strong, Caspar W. B. Townsend, Jr.,* and *Ballard, Spahr, Andrews & Ingersoll,* and *Morgan, Lewis & Bockius,* and *Saul, Ewing, Remick & Saul,* and *Townsend, Elliott & Munson,* for interested persons, under Rule 65.

OPINION BY MR. JUSTICE O'BRIEN, October 5, 1962:

The Municipal Authority of the Township of Upper St. Clair, Allegheny County, constructed a sanitary

sewer system to serve a portion of the Township. Upon its petition to the Court of Common Pleas of Allegheny County, a board of viewers was appointed to ascertain the costs, damages, and expenses and to assess the benefits of the sanitary sewer system against the properties benefited, improved or accommodated by it. The board, in due course, filed its report assessing 93 properties, identified as V-1, to V-93, for the cost of the improvement.

Seven of the assessed property owners appealed the report of the viewers to the court of common pleas, on the theory that three parcels of land served by the improvement had not been assessed and that their, the appellants', proportionate shares of the cost had thereby been increased. The court of common pleas affirmed the action of the board of viewers and one of the property owners appeals to this Court the order of the court below which confirmed the viewers' report.

The case has been argued twice before us and, on the reargument, interested parties not directly involved in the litigation, were permitted to appear under Rule 65.

The controversy concerns itself with a finding of the board of viewers that "All the properties in question [the three not assessed] are beyond the boundaries of the ordained sewer district; *and none in fact abut the sewer line either as ordained or constructed.*" (Emphasis supplied). There is ample evidence to support the conclusion that the three properties are beyond the boundaries of the sewer district and that they were not intended to, nor did they actually benefit from the improvement. That conclusion was reached by the viewers and by the court below; we cannot and will not disturb it on appeal. This then should conclude our opinion, for if the three properties are not within the sewer district, they could not have been assessed and the

court below was correct in so holding. The emphasized portion of the finding of the board of view, however, requires us to go into another question.

The properties involved are all located across the road from the actual sewer line. The First Class Township Code, Act of June 24, 1931, P. L. 1206, §2408, 53 P.S. §57408 provides: "The charge for any such sewer system construction in any township shall be assessed upon the properties accommodated or benefited in either of the following methods: (a) By an assessment, . . ., of each lot or piece of land in proportion to its frontage *abutting* on the sewer, . . . . (b) By an assessment upon the several properties *abutting* on the sewer in proportion to benefits, . . ." (Emphasis supplied).

That code, however, is not controlling in the case at bar because the instant sewer line was constructed not by the township but by a municipal authority whose powers are different from those of the township which created the authority.

The true nature of a Municipality Authority is that which is set forth in the earliest cases of this Court involving this type of public corporation. Section 2 of the Municipality Authorities Act of 1945 (53 P.S. §302(a)), defines the term "Authority" as meaning "a body politic and corporate, created pursuant to this act or pursuant to the 'Municipality Authorities Act of 1935' repealed hereby." It has been consistently held in cases in point, both under the Municipality Authorities Act of 1935 and 1945 and under other legislation involving authorities that an authority is not the creature, agent or representative of the municipality organizing it. In *Tranter v. Allegheny County Authority*, 316 Pa. 65, 79, 173 A. 289 (1934), this Court refers to the Authority "as the agent created for the purpose *by the State*" (emphasis supplied), notwithstanding the fact that under the Second Class County Authority Act the Authority therein provided for would not come into being until the county commissioners so declared.

In *Williams v. Samuel*, 332 Pa. 265, 277, 2 A. 2d 834 (1938), this Court commented that as to an Authority "the state can authorize its creature, the City, to transfer its sewer system to the Authority *created by the State.*" (Emphasis supplied). In *Lighton v. Abington Township*, 336 Pa. 345, 353, 9 A. 2d 609 (1939), this Court stated that: "In the Tranter case, . . . the State authorized the creation of a public corporation, the Allegheny County Authority, and required its agent, the county, upon the creation of the Authority, to transfer to the Authority certain property for purposes which were within the jurisdiction of the State. On the same theory the incorporation of Municipal Authorities has been supported. They are public corporations, being corporate agencies engaged in the administration of civil government. The *state* may modify the part performed by *its* agencies in government *by creating other agencies,* subject always to constitutional limitations. If there is any resemblance between (1) the exercise of the power of the state to modify township government by taking part of it from the township and *vesting* it in a *public corporation* and (2) by statute, authorizing the municipality to make a contract with a private corporation to take over and operate public property, the fact remains that the state may do the first but is expressly prohibited from doing the second." (Emphasis supplied). In *Commonwealth ex rel. McCreary v. Major*, 343 Pa. 355, 22 A. 2d 686 (1941), it was held that a member of a board of a Municipal Authority created under the Act of 1935 was a public official by reason of the fact that such entity is an independent agency of the Commonwealth and part of the sovereignty of the State. Similarly, in *Evans v. West Norriton Township Municipal Authority*, 370 Pa. 150, 87 A. 2d 474 (1952), Mr. Justice (now Chief Justice) BELL of this Court stated at page 154 that: "A Municipal Authority is defined by the Act as

'a body politic and corporate'. Its members are appointed by elected public officials. It receives a charter from the Commonwealth of Pennsylvania *which grants it certain characteristic attributes* of a corporation. It is authorized by law and by its charter to perform vast private as well as certain limited public functions." (Emphasis supplied).

Much unnecessary confusion has been injected into this field in past years apparently on the erroneous impression that an Authority is merely the child or instrumentality of the municipality incorporating it, under the authority of such isolated and unfortunate expressions as set forth in *State College Borough Authority v. Pennsylvania Public Utility Commission*, 152 Pa. Superior Ct. 363, 369, 370, 31 A. 2d 557 (1943) ; *Wilson v. Upper Moreland-Hatboro Joint Sewer Authority*, 183 Pa. Superior Ct. 588, 594, 132 A. 2d 909 (1957) ; and in the opinion of the Attorney General under the caption *In Re Municipal Authorities*, 43 Pa. D. & C. 12, 16 (1941). It is quite clear to us that the fundamental premise as to the nature of an Authority and as to the construction of the Municipality Authorities Act of 1945, as amended, on this point has been properly set forth and established by the line of cases first recited herein, in detail, beginning with the *Tranter* case. This should be apparent to all having familiarity with Municipality Authorities established in this State, since many exercise certain powers and perform certain functions both within and without the municipal limits of the incorporating municipality, within certain constitutional and statutory limitations, and rightly so. It is the very nature of many of the various purposes set forth in the Municipality Authorities Act that dictate such a course if Authorities are to accomplish the purposes intended under the Act in an efficient and economical manner and for the benefit and health of all the people of this Commonwealth.

Keeping clearly in mind the fundamental nature of an Authority as a corporate agency of the state, and not the child of a municipality, let us next look at the nature of the power of assessment, as exercised by this Authority, and certain corollaries thereto.

The Municipality Authorities Act of 1945, as amended, Section 4B (53 P.S. §306B), grants to every Authority, inter alia, the following rights and powers: "(r) To *charge* the cost of construction of any sewer constructed by the Authority against the properties *benefited, improved or accommodated thereby* to the extent of such benefits. Such benefits shall be assessed *in the manner* provided by section eleven of this act for the exercise of the right of eminent domain." (Emphasis supplied).

"(s) To *charge* the cost of construction of any sewer constructed by the Authority against the properties *benefited, improved or accommodated thereby* according to the foot front rule. Such charges shall be based upon the foot frontage of the properties so benefited, and shall be a lien against such properties. Such charges may be assessed and collected and such liens may be enforced *in the manner* provided by law for the assessment and collection of charges and the enforcement of liens of the municipality in which such Authority is located: Provided, That no such charge shall be assessed unless prior to construction of such sewer the Authority shall have submitted the plan of construction and estimated cost to the municipality in which such project is to be undertaken, and the municipality shall have approved such plan and estimated cost: And provided further, That there shall not be charged against the properties *benefited, improved or accommodated thereby* an aggregate amount in excess of the estimated cost as approved by the municipality." (Emphasis supplied).

And Section 11 of said Act (53 P.S. §314) provides, in part as follows: "The right of eminent domain shall be exercised by the Authority *in the manner* provided by law for the exercise of such right by municipalities of the same class, as the municipality by which such Authority was organized. In the case of a joint Authority eminent domain shall be exercised by the Authority *in the same manner* as is provided by law for the exercise of such right by municipalities of the same class as the municipality in which the right of eminent domain is to be exercised." (Emphasis supplied).

From subsections (r) and (s) set out above, it can be seen that the Legislature vested in every Authority the right to charge certain costs of construction by the two well known methods, "benefits" and "foot front", without regard to abutment. The only limitation is that the properties assessed must be benefited, improved or accommodated. The only reference to the code governing the conduct of the municipality is to establish the procedure for establishing and collecting the assessments.

Some general misconceptions have also apparently arisen from a too broad interpretation of *Evans v. West Norriton Township Municipal Authority,* supra. This case was decided on a very narrow point involving Article III, §20 of the Constitution of Pennsylvania and its application to the Municipality Authorities Act, and should be restricted thereto. This Court held that the Act, more particularly subsection (s) aforementioned, was not a violation of the constitutional provision since it did not delegate the unlimited power to levy taxes to an Authority inasmuch as the basis for the assessments (the plan of construction and the estimated costs thereof) to be valid, must have been approved by the elected municipal officials. This case, read in the light of all other prior and subsequent cases involving Authorities, cannot be considered as deciding

or even implying that general limitations as to assessments imposed by law on local municipalities must be read into subsection (s) of the Act in order to render it constitutional. The phrase "in the manner" appearing in subsection (s) merely indicates that procedural rules set forth in the code of the local municipality are to be followed, but does not dictate that the substantive law governing the local municipality must be controlling. The substantive law governing the charges made by an Authority is contained in the rights given to it by the Legislature, its parent body, in the empowering statute, the Municipality Authorities Act.

In the light of the foregoing, we conclude that the question of abutment is not germane to this litigation, the improvement having been constructed by an Authority whose assessment powers do not require that the properties assessed abut the improvement. The properties in question were not benefited, improved or accommodated by the sewer line and were therefore not assessable.

Order affirmed.