## Fleischut v. Township of Mount Lebanon

*T. Robert Brennan* and *Brennan & Brennan*, for plaintiffs.

*Milton W. Lamproplos* and *Eckert, Seamans & Cherin*, for defendant.

OLBUM, J., December 28, 1962.—This action in assumpsit, by agreement of the parties, has been submitted to the court without jury on a stipulated statement of the facts, which was supplemented by a limited amount of testimony. It is further agreed by counsel that the finding in this case will also control the companion cases at no. 3912 January term, 1962, and no. 3913 January term, 1962.

In 1959, the State Department of Highways entered into an agreement with the Township of Mount Lebanon, a first class township, by which the State agreed to resurface the existing cartway of a portion

of Kelso Road in said township lying between Bower Hill Road and Bethany Drive (which was a two-lane macadam highway with earth berms), to pave additional widths of 13 feet on each side of the existing cartway, and to construct certain catch basins and cross drains for said portion of Kelso Road. The township agreed to grade and curb the additional widths of 13 feet on each side of the existing cartway, to construct a new storm sewer in a part of that portion of Kelso Road to be improved and connect it to an existing storm sewer, and to connect the catch basins and cross drains to be constructed by the State to the new and existing storm sewers.

Plaintiffs did not petition for said improvement.

By ordinance no. 1955 of 1959, the board of commissioners of the township authorized and directed that said work be undertaken and that the costs, damages, and expenses involved be assessed against abutting properties in the manner thereafter to be determined by the board of township commissioners.

By ordinance no. 1990 of 1959, the board of township commissioners duly ordained that the costs of the grading, curbing and other improvements, including the expense of necessary drainage of the improved portion of Kelso Road, be assessed against the owners of the real estate abutting said improvement, by an equal assessment on the front foot, in accordance with section 2060 of the First Class Township Code of June 24, 1931, P. L. 1206, 53 PS §57060.

Upon completion of the project in accordance with the provisions of ordinance 1955, and in accordance with its agreement with the State Department of Highways, at a total cost to the township of $38,294.38,[1] the board of township commissioners, by ordinance no.

---

[1] The total costs of the storm sewer facilities constructed was $9,551.10, or 24.9 percent of the total cost of the project to the township.

2036 of 1959, assessed the costs and expenses (less $2,303.26 assessed against the township), including the expense of necessary drainage, against the owners of property abutting the improvement, and by said ordinance allocated the assessments against said property owners in accordance with the front foot of each property. Under that ordinance plaintiffs were assessed the sum of $450.19.

Plaintiffs objected to that portion of the assessment representing "the expense of the necessary drainage" for the improvement, on the ground that their property does not abut the new storm sewer. It was agreed by counsel for both parties that plaintiffs and other property owners similarly situated might pay their entire assessment under protest, preserving their right to file an action to test the legality of that portion of the assessment complained of.

Plaintiffs have instituted this amicable action in assumpsit to recover the sum of $119.30, representing the portion of their assessment attributable to the expense of the necessary drainage of the improvement.

Plaintiffs' property lies on that portion of Kelso Road which was improved by the resurfacing of the existing cartway, the widening on each side, the grading and paving of the widened portions, and the installation of concrete curbing, but does not abut the new storm sewer. Plaintiffs aver that the only storm sewer connection along Kelso Road was between its intersection with Worcester Drive and Pembroke Drive, in which portion of Kelso Road plaintiffs' property does *not* lie, that no new sewer was constructed which abuts plaintiffs' property; that the new storm sewer that was constructed was connected to the existing storm sewer, which does not abut plaintiffs' property; and that the existing storm sewer had effectively served the needs of all land owners located in that portion of Kelso Road which is south of its intersection

with Pembroke Drive, among which land owners plaintiffs are included. In short, plaintiffs maintain that their property does not abut *the new storm sewer*, derives no benefit whatsoever therefrom, and that therefore the assessment against them for *the new storm sewer* is illegal. They concede that the assessment against them for the grading of the widened portion of the cartway and the concrete curbing was proper.

Plaintiffs' argument is premised entirely on the theory that the instant improvement in Mount Lebanon Township was performed under the provisions of article XXIV, section 2425, of the First Class Township Code, 53 PS §57425. The title of article XXIV is "Sewers and Drains." The subdivision head for section 2425 is "(d) Sewers and Drains in Streets or Highways, or over private property; assessment of cost of construction according to benefits."

Plaintiffs correctly maintain that *under this section*, property may be assessed for the construction of "Sewers and Drains" only if it is accommodated or benefited by the construction *and* if it abuts the sewer.

The township contends that the improvement to Kelso Road was undertaken under the provisions of article XX, section 2060, of the First Class Township Code, 53 PS §57060, as is specifically indicated in ordinance no. 1990. The title of article XX is "Streets and Highways." The subdivision head for section 2060 is "(i) Grading, Draining, Curbing, Paving, or Macadamizing Streets or Highways, and Collection of Cost by Foot Front Rule."

Defendant maintains that section 2425 of the First Class Township Code is not applicable, because it applies only to sanitary sewers; and that under section 2060, when provision must be made for necessary storm drainage incidental to a street improvement, the cost of the whole improvement, *including the expense of necessary drainage*, may be assessed by the foot front method

against all the real estate *abutting on the highway improvement, even though such real estate does not abut a new storm sewer* or other storm drainage facilities which have been constructed as part of the improvement.

It is curious that, despite the fact that ordinance no. 1990 states that the improvement was performed under section 2060 of the First Class Township Code, counsel for plaintiffs in their brief disregard that section to the extent of making no reference to it whatsoever, and base their complete argument on the provisions of section 2425. We are unable to comprehend why counsel for plaintiffs have conclusively presumed that the provisions of section 2425 are applicable.

A cursory examination of articles XX and XXIV of the First Class Township Code reveals that they deal with entirely different subjects. Article XX (53 PS §57001 et seq.) is captioned "Streets and Highways." Under that article, section 2001 requires every township to have "a general plan of its streets and highways"; section 2005 gives the township commissioners the power to "survey, lay out, open, widen, straighten, vacate and relay streets and parts thereof"; sections 2007 to 2010 set forth the details of the exercise of that power, including the appointment of viewers to assess the damages and benefits resulting therefrom; sections 2012 and 2013 specify requirements as to the width and the maintenance of township streets; section 2014 deals with detours; section 2020 deals with "Plans of dedicated streets", and provides that no person shall construct, open, or dedicate any street, or *any drainage facilities in connection therewith,* without first submitting plans to the township commissioners showing, inter alia, "the profiles of such streets, *the course, structure and capacity of any drainage facilities,* and the *method of drainage of the adjacent or contiguous territory."* Section 2022 relieves the township commissioners of responsibility as to any street, *or any drain-*

*age facilities in connection therewith,* which are not constructed in accordance with approved plans. Section 2024 provides a penalty for constructing a street, *or any drainage facilities in connection therewith,* for public use, except in compliance with the prescribed procedure. Other sections of article XX deal with such subjects as the elimination of curves; changing or altering streets; ditches, drains and watercourses; streets crossing railroads; and county-aid in the improvement of township streets. Section 2060 of article XX, under which the assessment in this case was made, is hereinafter set forth and discussed. (Italics supplied.)

It is manifest that when "drainage facilities" are mentioned in article XX, they refer to *storm drainage* and *not to sanitary sewers.*

Article XXIV (53 PS §57401 et seq.), is captioned "Sewers and Drains", and clearly deals with sanitary sewers and drainage, and not with storm sewers and storm drainage. The first section of this article, section 2401, gives the township commissioners the power to construct "a system of sewers and drainage", and "where necessary for the public health", to require an abutting property owner to connect with such sewer "for the purpose of *discharge of such drainage or waste matter* as the commissioners may specify." Section 2401.1 again deals with the discharge of "*such drainage or waste*" as the commissioners may specify. Section 2403 requires the commissioners to provide for the disposition of the sewage and drainage of the township, and empowers them to operate *sewage treatment works.* Section 2404 again deals with "the disposition of sewage or drainage." (Italics supplied.)

Section 2425, on which plaintiffs rely, is part of article XXIV, and authorizes the assessment of the cost of construction of "sewers or drains . . . upon the properties accommodated or benefited . . . by an assessment . . . of each lot in proportion to its front-

age abutting on the sewer . . ." or "by an assessment upon the several properties abutting on the sewer in proportion to benefits . . ."

Section 2060 of the code, under article XX, provides:

"Townships, with petition or without petition, may grade, curb, gutter, pave, macadamize, or otherwise improve, streets or highways, or parts thereof, or a particular width or additional widths thereof, with or without the assistance or contribution of the State, county, or a corporation occupying the thoroughfare, and may assess and collect the whole cost thereof, or the whole cost not thus aided or contributed, or any part thereof, from the owners of real estate *abutting on the improvement*, by an equal assessment on the foot front, *including the expense of the necessary drainage* . . ." (Italics supplied.)

It is clear that the widening, grading, paving, and curbing of Kelso Road were done under the provisions of section 2060 of article XX, as ordinance no. 1990 states. It is equally clear that "the necessary drainage" provided for in this section means *storm drainage*, and not *sanitary drainage*.

It is also clear that the legislature did not intend that the cost of such construction, including the cost of incidental storm drainage facilities, may be assessed only against property which abuts *both* the improved street and the new storm drainage facilities. The legislature intended that a property *which abuts the improvement*, in this case *the improved portion of Kelso Road*, may be assessed by the foot front rule a proportionate cost *of that total improvement*, including the cost of necessary additional storm drainage facilities, whether or not the property abuts any such facilities. If the legislature had intended that in such a street improvement the cost of the necessary drainage facilities should be segregated in the cost of the total improvement, and assessed only against the property abutting such new drainage facilities, it could have

done so in simple language. Since the legislature has failed to enact such provision, it must be concluded that its intent was that the cost of the improvement, including storm drainage facilities, may be assessed in the fashion in which the township has proceeded in this case.

The cases cited and quoted from in plaintiffs' brief, relating as they do to legislative enactments which are distinctly different from that contained in section 2060 of the First Class Township Code, are not pertinent to this discussion. Moreover, there is no basis in law for the theory plaintiffs' counsel appear to espouse, namely, that there is a sacrosanct rule of law that real estate is immune from assessment by the foot front rule for a benefit or improvement unless it abuts the improvement.

Plaintiffs' brief places reliance on and quotes from Wilson v. Upper Moreland-Hatboro Joint Sewer Authority, 183 Pa. Superior Ct. 588, in which the Superior Court said that "the appellate courts of Pennsylvania have never interpreted the foot front rule in such manner as to permit the assessment of property frontage which does not actually abut on the line of the improvement." That court said that in granting to a municipality authority (in the Municipality Authorities Act) the power "To charge the cost of construction of any sewer constructed by an Authority against the properties benefited, improved or accommodated thereby according to the foot front rule . . . ," without mention of a requirement of abutment, the legislature had not intended to grant to an agency the court regarded as a child of a municipality a power which its parent had not been granted. The Superior Court therefore struck down the assessment, on the ground that the property in question did not abut the sanitary sewer.

In Simon Appeal, 408 Pa. 464, the Supreme Court has reversed the holding of the Wilson case, supra, and has said that the power given to an Authority *by the legis-*

*lature* to use the foot front rule of assessment solely on the basis of benefit, improvement, or accommodation to the property, irrespective of abutment of the property on the improvement, is a valid legislative enactment. An authority is not the child of the municipality incorporating it, but of the Commonwealth, and derives its powers from the legislature. "The substantive law governing the charges to it by the Legislature, its parent body, in the empowering statute, the Municipality Authorities Act."

The Supreme Court concluded that the assessment in question in Simon Appeal, supra, which was an assessment for a sanitary sewer system, was invalid because the properties involved were not benefited, improved, or accommodated by the sewer line, but that "the question of abutment is not germane to this litigation, the improvement having been constructed by an Authority whose assessment powers do not require that the properties assessed abut the improvement."

The legislature has done in section 2060 of the First Class Township Code precisely what it has done in section 4B(s) of the Municipality Authorities Act of May 2, 1945, P. L. 382, 53 PS §306 B(s). A municipality is no less a child of the legislature than is a municipality authority. If the legislature can lawfully grant one child the power, there is no reason why it cannot grant the same power to another child.

The language of section 2060 is clear and free from ambiguity, particularly when viewed in juxtaposition with the language of sections 2408 and 2425. We see no reason why it should not be given its plain and obvious meaning: MacDougall v. MacDougall, 397 Pa. 340, 343; Commonwealth ex rel. Cartwright v. Cartwright, 350 Pa. 638, 645.

The record amply supports the conclusion that the widening, grading, paving, and curbing of Kelso Road between Bower Hill Road and Bethany Drive required additional storm drainage facilities, which were con-

582

structed as a necessary part of the improvement, to provide adequate storm drainage *for the entire improved portion of Kelso Road.* We are of the opinion that under section 2060 of the First Class Township Code, "abutting on the improvement" means abutting the improved street, and not any new drainage facilities, and that section 2060 specifically authorizes the assessment of the entire cost of the improvement *against the properties abutting the improved portion of Kelso Road.* Therefore, the assessment by the township against the property of the plaintiffs in this case is a lawful assessment.

Accordingly, a finding will be entered in favor of defendant township.

*Finding*

Now, December 28, 1962, after trial without jury, the court finds in favor of defendant, Township of Mount Lebanon.