## Commonwealth ex rel. Starner v. Minninger

*Geoghegan & Ozorowski*, for Commonwealth.

*High, Swartz, Roberts & Seidel*, for defendants.

FORREST, P. J., September 21, 1964.—Donald Starner, LeRoy Davidson, Roger Wittmer and John Daly filed their complaints in quo warranto on April 2, 1964, seeking an order that defendants, Joseph H. Minninger, Charles Hartley, Henry H. Bates and Charles Murgia be ousted from membership in the

Hatfield Township Municipal Authority and determining that the above plaintiffs are lawfully entitled to act as members of the Hatfield Township Municipal Authority. This consists of four separate actions of quo warranto, which have been consolidated for trial by agreement between counsel for all parties.

On January 1, 1964, new commissioners took office in Hatfield Township and they sought to remove the defendants as members of the municipal authority and appoint plaintiffs as members of the municipal authority. Plaintiffs have alleged that defendants are not members of the authority (1) because of defects in their appointments; (2) because they failed to file certain oaths with the township secretary.

A complaint, answer to complaint and new matter and a reply to new matter have been filed in each case. A hearing was held before this court on June 22, 1964, at which time testimony of a number of witnesses was received and transcribed. From the evidence taken at the hearing, we make the following

*Findings of Fact*

1. The Board of Commissioners of Hatfield Township, Montgomery County, Pa., formed a Municipal Authority under the Municipality Authorities Act of May 2, 1945, P. L. 382, as amended, and the authority's corporate existence began May 13, 1960.

2. The original board members of the Hatfield Township Municipal Authority appointed by the Board of Commissioners of Hatfield Township were John Gill, Elmer Tobin, Charles Choyce and Joseph H. Minninger. These men took an oath of office administered by a justice of the peace, in the presence of the commissioners.

3. John Gill was appointed an original member of the municipal authority for one year, which term measured from January 1, 1961, to December 31, 1961. He was reappointed to a five-year term on Janu-

ary 19, 1961, by the commissioners, which term was to commence at the expiration of his one-year term.

4. On June 11, 1962, John Gill resigned his office as a member of the authority and Charles Murgia was appointed to fill his unexpired term, and has served from that time to date in office.

5. Elmer Tobin was appointed as an original member of the municipal authority for a two-year term, measured from January 1, 1961, to December 31, 1962.

6. On February 12, 1962, the commissioners of Hatfield Township appointed Charles Hartley to a five-year term to replace Elmer Tobin, his term to commence at the expiration of the Tobin term.

7. On February 1, 1960, Joseph H. Minninger was appointed by the Commissioners of Hatfield Township for a term of three years, which term measured from January 1, 1961, to December 31, 1963. He was reappointed by the commissioners to a five-year term on May 6, 1963, which term was to commence upon the expiration of his first term of office.

8. On October 7, 1963, Henry M. Bates was appointed by the Commissioners of Hatfield Township to fill the unexpired term of Charles Choyce, an original member of the authority, whose term would have expired December 31, 1964.

9. On November 8, 1963, the said Henry M. Bates was appointed auditor of Hatfield Township by the order of the Court of Quarter Sessions of Montgomery County, Pennsylvania. The order of appointment limited the duties of the office to auditing the 1963 finance records of the township, and to make a report thereon.

10. The commissioners of Hatfield Township have not established any procedure or rules or regulations regarding the swearing in to office of municipal authority members, or any rules or regulations regarding the taking of oaths, either under the First Class

Township Code or under the Pennsylvania Loyalty Oath Act.

11. Defendants, Charles Hartley, Charles Murgia and Henry M. Bates, appeared before Roosevelt I. Polite, a justice of the peace, and were sworn into said office. Charles Murgia was sworn in on June 18, 1962; Charles Hartley was sworn in on March 13, 1962; Henry M. Bates was sworn in on November 4, 1963. A copy of each of their oaths was filed with the municipal authority secretary, except that of Charles Hartley, which copy of said oath was filed with the township secretary.

12. From January 1, 1960, to December 31, 1963, the following commissioners of Hatfield Township were in office: John Foyle, Thomas S. Wynne, Paul Hilgner, Edward L. Kohlman and Mervin F. Stewart, except during the period January 1, 1962, to December 31, 1963, when Owen J. Keenan replaced Paul Hilgner.

13. On February 14, 1964, John T. Davis, president of the board of commissioners, advised each of the defendants that because of their failure to file a copy of their oath of office with the township secretary, they were improperly in office.

14. On February 25, 1964, defendants each appeared before Roosevelt I. Polite, justice of the peace, and swore to the Pennsylvania Loyalty Oath and forwarded the original of said loyalty oath to the township secretary. The solicitor of the township thereupon returned the loyalty oath to each of the members.

15. None of the defendant authority members have ever been requested by the board of commissioners to take any oath, nor have they refused at any time to take any oath.

*Discussion*

The first argument presented by plaintiffs is set forth in the first count of each suit, wherein they allege

that defendants were appointed in advance of the date of the expiration of either their earlier appointment or the appointment of their predecessor, who had resigned his office. It is provided under the Municipal Authority Law that the terms of appointed members are to commence on January 1st, next succeeding the date of incorporation and the time of appointment to be whenever a vacancy has occurred or is about to occur, or for terms of office from the date of expiration of the prior term to succeed the member whose term has expired or is about to expire. The secretary of the Commonwealth approved the Articles of Incorporation of the Hatfield Township Municipal Authority on May 13, 1960.

With regard to the appointment of Charles Murgia, plaintiff asserts that John Gill was an original member of the authority, his appointment to run to December 31, 1961. On January 19, 1961, John Gill was appointed to a five-year term to commence at the end of his one-year term, namely December 31, 1961. This appointment was approximately 11 months in advance of the expiration of the previous term, apparently because the commissioners mistakenly believed that authority members' terms were measured from the date of actual appointment.

It is argued by plaintiffs that this latter five-year appointment is void because it was made in advance of the expiration of the prior term. John Gill vacated or resigned the office and on June 11, 1962, Charles Murgia was appointed to fill the vacancy. Plaintiffs' position that the Gill appointment being in advance of the expiration of the term is therefore void, is incorrect in light of the Municipality Authorities Act. Section 7, Governing Body:

"A. The Powers of each Authority shall be exercised by a governing body (herein called the 'Board') composed as follows:

"a. If the Authority is incorporated by one municipality the Board shall consist of such number of members not less than five as shall be set forth in the articles of incorporation or amendment thereto. The governing body of such municipality shall appoint the members of the board, whose terms of office shall commence on the date of appointment. One member shall serve for one year, one for two years, one for three years, one for four years and one for five years *from the January first next succeeding the date of incorporation or amendment.* . . . Thereafter, whenever a vacancy has occurred *or is about to occur* by reason of the expiration of the term of any member, the said governing body shall appoint a member of the board for a term of five years *from the date of expiration of the prior term* to succeed the member whose term has expired or is about to expire. . . .": Act of May 2, 1945, P. L. 382, sec. 7, as amended, 53 PS §309. (Italics supplied.)

The act makes direct reference to "whenever a vacancy is about to occur" prior to the expiration date, and in the case of the expiration of a prior term, to reappoint when a term has expired, "or is about to expire." Because of the commissioners' apparent misconception as to when the end of the term expired, John Gill was reappointed approximately 11 months in advance of the expiration of his prior term. Actually, the same commissioners would have acted had this reappointment been made in December of 1961, rather than January 19, 1961. It is abundantly clear that the commissioners acted in good faith and intended to, and did, reappoint John Gill for the term period to commence at the expiration of the first term, December 31, 1961. Upon John Gill's vacating or resigning this office, Charles Murgia was validly appointed to fill this vacancy for a five year term.

With regard to the appointment of Charles Hartley, Elmer Tobin was an original member of the authority, appointed to a two-year term commencing January 1, 1961, and to end December 31, 1962. Elmer Tobin resigned his office and on February 12, 1962, the commissioners appointed Charles Hartley to a five-year term. In accordance with section 7(a) of the Municipality Authorities Act, the commissioners had the power to, and did, validly appoint Mr. Hartley for a five-year term, said term to commence at the expiration of the original appointment of Mr. Tobin.

With regard to the appointment of Joseph H. Minninger, Mr. Minninger was an original appointee for a term of three years, to commence January 1, 1961, and to end December 31, 1963. On May 6, 1963, Mr. Minninger was reappointed to a five-year term, commencing at the expiration of his original term, on December 31, 1963. Here again the appointment was made in advance of expiration of the prior term, albeit this is a valid appointment under section 7(a) of the Municipality Authorities Act.

With regard to the appointment of Henry M. Bates, Mr. Bates was appointed October 7, 1963, to fill the unexpired term of Charles Choyce, whose term was to expire December 31, 1964. The first count of plaintiffs' complaint against Mr. Bates is different in that since Mr. Bates was appointed as auditor to review the fiscal records on November 8, 1963, it alleges that he is holding two incompatible offices, namely as an auditor and as an authority member, and that under the First Class Township Code, 53 PS §55520, he cannot hold these offices.

It is important to note that his role as auditor was only as an appointed one by the court for the limited task of reviewing the fiscal records at the end of the year, making an immediate report, and being paid a fee, whereupon his appointment as auditor was fin-

ished. Plaintiffs point to the First Class Township Code of June 24, 1931, P. L. 1206, sec. 520, which provides:

"No auditor shall at the same time hold any other elective or appointive office."

The First Class Township Code deals with township officials and has no relation to a municipal authority appointment, which is governed by the Municipality Authorities Act of 1945. It is not the municipal authority office which would be vacated, but the position of auditor. At the present time, Mr. Bates is no longer serving as auditor, as this was a limited appointive position, the duties of which have been completed. The only position he would lose would be that of township auditor. See In re Lower Chichester Township Auditor, 23 D. & C. 2d 176 (1960). This court feels that under section 7(a) of the Municipality Authorities Act of May 2, 1945, P. L. 382, as amended, 53 PS §309, these appointments are valid.

Plaintiffs in their second count contend that defendant members of the authority did not take the First Class Township Code oath as set forth in 53 PS §55601, which dealt with "every person elected or appointed to any township office." The Act of June 24, 1931, P. L. 1206, art. VI, sec. 601, deals only with people elected or appointed to a *township office*. Authority members of a municipal authority, incorporated under the Municipality Authorities Act of 1945, do not hold a township office. The Supreme Court has held that authorities are subject only to the Municipality Authorities Act and not to the various municipal codes. In Whitemarsh Township Authority v. Elwert, 413 Pa. 329, at 332 (1964), the Supreme Court stated the basic rule:

"In Simon Appeal, 408 Pa. 464, 184 A. 2d 695 (1962), we held that Municipality Authorities *are not the creatures, agents, or representatives of the organizing municipality*. Rather, we held, they are inde-

pendent agencies of the Commonwealth and part of its sovereignty. We further held, that the powers of Municipality Authorities are contained in the Municipality Authorities Act of 1945 (citation omitted) *and not in the codes granting powers to the various classes of municipalities of the Commonwealth.*" (Italics supplied.)

Plaintiffs' contention that defendants have failed to take and file an oath of office in accordance with the First Class Township Code is without merit in that the First Class Township Code does not deal with municipality authority members. It may be noted, however, that all of the defendants have taken an oath of office before a justice of the peace, and all of which were filed with the municipal authority secretary, except for Charles Hartley, who filed his with the township secretary.

Plaintiffs also contend in the second count that defendants have failed to take a Pennsylvania Loyalty Oath and file it with the township secretary, and for that reason they are improperly in office. Under section 4 of the Pennsylvania Loyalty Act of December 22, 1951, P. L. 1726, as amended, 65 PS §214, it is provided that each appointing authority shall establish by rules and regulations, procedures by which a person who is an appointee will be tested on possible subversive causes and to make a written statement, i.e., a loyalty oath. Under this section it is the appointing authority who is to set up such rules and regulations and *require* said persons to take an oath. In the instant case, no rules and regulations were ever promulgated by the authority. In fact, neither the authority nor the township ever requested or required any of the defendants to take an oath. The first communication received by defendants with regard to the taking of any oath was by letter dated February 14, 1964, from the president of the board of commissioners. This communica-

tion was directed to the township oath and not to the loyalty oath.

On February 25, 1964, all of the defendants swore to a loyalty oath before a justice of the peace and submitted these to the township secretary. Soon thereafter, the township solicitor rejected and returned the oaths to each of the defendants. The Pennsylvania Loyalty Oath Act does not state when the loyalty oath must be taken by the various appointees. Although none of the defendants were ever notified or made aware of the fact that a loyalty oath must be made and filed, the commissioners declared vacant the defendants' offices for the reason that a loyalty oath had not been filed.

In the case of Geyer v. Ausherman, 32 D. & C. 2d 405 (C. P. Franklin Co. 1963), a nominee for public office failed to file a loyalty oath within 60 days after the primary at which time he was nominated, as required by section 14 of the loyalty oath, but notwithstanding that failure, the court allowed him to have his name appear on the ballot and stand election. The court stated, at page 413:

"The Supreme Court has, in interpreting mandatory language, said that attention must be given to what is the essence of the thing aimed at by the legislature in the particular legislation. . . . Certainly, one is not more or less loyal depending upon what day he takes the loyalty oath. The particular day of taking the oath, aside from the necessity for observing some kind of system in the manner, is not important. . . . The voters can be as well assured concerning the loyalty of the candidate by an affidavit filed in early August or presently as if the oath had been filed by July 22d."

This court is of the opinion that plaintiffs' contention is without merit. No rule or regulation was ever established nor were defendants ever asked to submit

a loyalty oath. Despite this, defendants voluntarily swore to loyalty oaths and submitted them to the township secretary. They were rejected. There is no question raised that these men are not loyal citizens. Certainly, their loyalty oaths as filed with the township secretary and rejected, suffice in absence of any requirements as prescribed by the Municipal Authority.

And now, September 21, 1964, judgment in the cause is given in favor of defendants and against plaintiffs. Plaintiffs are directed to pay the costs of their individual actions.