In the Matter of NORTH AND SOUTH SHENANGO JOINT MUNICIPAL AUTHORITY, Debtor.

Bankruptcy No. 81–00408.

United States Bankruptcy Court, W. D. Pennsylvania.

Sept. 29, 1981.

Robert O. Lampl, Campbell, Lampl & Levine, and John V. Adams, Jr., Edward G. Shoemaker, Adams, Shoemaker & McSorley, Pittsburgh, Pa., for debtor.

Harold R. Schmidt, William I. Jack, Russell J. Ober, Jr., Rose, Schmidt, Dixon & Hasley, Pittsburgh, Pa., and Peter E. Blystone, Blystone, Fuller, Kinnunen, Miller & Gamble, Meadville, Pa., for PennBank.

Michael A. Donadee, Chief Counsel for Pennsylvania Dept. of Community Affairs and Douglas R. Blazey, Chief Counsel for Pennsylvania Dept. of Environmental Resources, Harrisburg, Pa., for respective State Departments.

## MEMORANDUM AND ORDER

WILLIAM B. WASHABAUGH, Jr., Bankruptcy Judge.

The North and South Shenango Joint Municipal Authority was incorporated December 5, 1974 under the Municipality Authorities Act of May 2, 1945, P.L. 382, 53 P.S. § 301 et seq. to construct and operate a sewer system to serve the townships of North and South Shenango, Crawford County, Pennsylvania[1]. The construction was financed by grants and estimated receipts totaling $13,842,050 from the United States Environmental Protection Agency ($9,370,650), the Pennsylvania Department of Environmental Resources ($150,000), estimated tap-in charges ($1,112,500) and the United States Farmers Home Administration ($3,208,900). Interim financing was arranged with PennBank of Titusville, Pennsylvania in the sum of $6 million under a commitment and Bank Loan Agreement dated January 1, 1977.

The system was found to have been defectively constructed by the late Honorable William W. Knox, deceased, in an Opinion dated August 14, 1980 in an action instituted by The Pymatuning Water Shed Citizens for A Hygienic Environment, a non-profit corporation, against the Authority in the United States District Court for the Western District of Pennsylvania at Civil Action No. 79–70 B Erie because of leaky joints associated with poorly constructed clay pipe permitting infiltration of surface water during periods of rainy weather as a result of which raw sewage is discharged into the Pymatuning Dam and its tributaries, and into the Shenango River with efforts to repair the leaky pipes through the process of "grouting" being ineffective and inappropriate. The Court retained jurisdiction of the proceeding for the enforcement and supervision of remedial action pursuant to the provisions of the Federal Water Pollution Control Act (Clean Water Act), 33 U.S.C. § 1251 et seq.

The decision was appealed to the United States Court of Appeals for the Third Circuit at No. 20–2433 and affirmed March 30, 1981, and all but one of the members of the original Board of the Authority who had consistently dissented from its actions thereafter resigned and were replaced by members of the citizens organization that instituted the suit. The new Board has retained new attorneys and engineers and has been negotiating with the government agencies and Bank in an effort to find a way to make and finance needed emergency repairs, but PennBank set off all funds of the Authority in its hands under the Loan Agreement and a subsequently entered into Agency Agreement (in excess of $300,000) without prior notice or efforts to work out a solution between the Authority and the contractors and government agencies April 13, 1981 after extending the period of the loan to July 1, 1981. Judge Knox wrote in a Memorandum dated June 16, 1981 dismissing a motion of the plaintiffs to join PennBank as a party defendant to obtain restoration of its funds because there was no diversity of citizenship:

---

1. Three of the six members of the Board were appointed by each of the two townships as provided by Section 7(b) of the Act, 53 P.S. 309(b).

"... it was developed that the bank had already given an extension on its loans to July 1, 1981, when out of a clear sky, they seized the bank accounts on April 13, 1981, 12 days after the issuance of the order of affirmance by the Court of Appeals.

.    .    .    .    .

"It would appear that ... irreparable harm will result from the sewage system shutting down operations on July 1, 1981, at the height of the Summer season.

.    .    .    .    .

"There is no question the public interest lies in preventing further pollution of Pymatuning Lake and the Shenango River and there is no question that the balance of equities are in favor of the plaintiff."[2]

Judge Knox's Order in his earlier Opinion dated August 14, 1980 and affirmed by the Court of Appeals holding the sewer system was defective and that the District Court had jurisdiction to prevent violations of the provisions of the Clean Water Act gave the Authority ninety days in which to submit written proposals and a time table of plans to effectuate the abatement of the discharges of sewage into the Shenango River and its tributaries, and the obtaining of appropriate relief from the contractors and their bondsmen through litigations in the state courts and additional funds for repairs from the government agencies. He issued a similar Order giving the Authority ninety days to produce the proposals from May 18, 1981 in his Order of that date after a status conference with counsel for the parties following the affirmance of the earlier Order by the Court of Appeals and the set off of the Authority's funds by PennBank in which he adverted to the emergencies of the situation owing to the imminent collapse of the sewer system and the fact that the Authority was without funds to operate its business[3].

PennBank instituted actions in the Court of Common Pleas of Crawford County to enjoin the Authority from using its funds for purposes other than paying the bank's obligations and for the appointment of a Receiver under Section 6 of the Municipality Authorities Act of 1945, 53 P.S. § 308, following which the Authority filed the within Petition for an Adjustment of its debts under Chapter 9 of the Bankruptcy Reform Act of 1978 as a result of which the State Court receivership proceeding has been automatically stayed. The matters are before us on a motion of PennBank joined in by the Departments of Community Affairs and Environmental Resources of the Commonwealth of Pennsylvania to dismiss the Chapter 9 Petition on the ground that the requirements of the Bankruptcy Code and the Pennsylvania Municipality Authorities Act that such proceeding be authorized generally by state law, or by a department or official of the Commonwealth of Pennsylvania empowered by state law to give such approval, have not been complied with.

Section 109 of the Bankruptcy Reform Act provides

"An entity may be a debtor under Chapter 9 of this title if and only if such entity

**2.** The Court refused the effort of the plaintiffs to join the contractors and engineers responsible for the faulty construction as parties defendant in his Original Memorandum dated June 13, 1980 on the ground that the element of diversity of citizenship was lacking and that since the prospective additional defendants were not presently causing pollution in violation of the Federal Clean Water Act, the litigations against those parties should be pursued in the state, not federal courts.

**3.** Judge Knox adverted to the fact that the members of the new Board were controlling members of the Citizens group that had filed the suit against the former Board in his Memorandum of June 16, 1981, but nevertheless retained jurisdiction to enforce the provisions of the Federal Clean Water Act, 33 U.S. § 1251 et seq. By Order dated June 20, 1981 he approved the resignation of the attorneys who had represented the defendant authority when its Board had been comprised of the members who were responsible for the faulty construction, and the retention by the new Board comprised of members of the Plaintiff Citizens Organization of the attorneys who filed the suit on behalf of said citizens as attorneys for the Authority and its reorganized present Board.

"(1) is a municipality;

"(2) is generally authorized to be a debtor under such Chapter by state law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter;"

The term "Municipality" is defined in Section 101(29) of the Bankruptcy Code as

"(29) 'municipality' means political subdivision or public agency or instrumentality of a State."

and in Section 1991 of Pennsylvania Consolidated Statutes Annotated, 1 Pa.C.S.A. § 1991 as follows:

" 'Municipality.'

"(1) When used in any statute finally enacted on or before December 31, 1974, a city, borough or incorporated town.

"(2) When used in any statute finally enacted on or after January 1, 1975, a county, city, borough, incorporated town or township."

The Act of 1935 P.L. 323 Section 1, 53 P.S. § 5571 amended the general Municipal Law of the Commonwealth of Pennsylvania after the municipal bankruptcy provisions of the Bankruptcy Act of 1898 as amended were declared unconstitutional in *Ashton v. Cameron County Water Improvement District No. 1*, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309 (1936) to provide with respect to *political subdivisions* (not "*municipal authorities*" that

"No *political subdivision* of this Commonwealth shall file any petition in any district court of the United States under the Municipal Bankruptcy Act, adopted by the Congress of the United States, approved the twenty-fourth day of May, one thousand nine hundred and thirty-four, . . . alleging that it is insolvent or unable to meet its debts as they mature, and expressing its desire to effect a plan of readjustment of its debts, unless such petition has first been submitted to, and the filing thereof has been first approved, in writing, by the State Department of Internal Affairs." (emphasis supplied)

The Act empowered the Department of Internal Affairs (now Community Affairs)

as the Agency of the Commonwealth to approve or disapprove the filing of such petitions on behalf of a political subdivision, and provided in Section 2, 53 P.S. § 5572, that the Department shall investigate the financial condition of such political subdivision and its assets and liabilities to determine whether the proposed Plan of Readjustment will be helpful to the financial condition of the political subdivision or represents an unjust attempt to erode payment of contractural obligations.

The term "*political subdivision*" is defined in Section 1991 of Pennsylvania Consolidated Statutes Annotated, at 1 Pa.C.S.A. Section 1991 and the earlier Statutory Construction Act of 1937 P.L. 1019, 46 P.S. § 601 (88) as follows:

" 'Political subdivision.' Any county, city, borough, incorporated town, township, school district, vocational school district and county institution district."

No definition of "*political subdivision*" is contained in either the Municipality Authorities Act or the Bankruptcy Code, nor is there any prohibition of or qualification to the right of a municipal authority incorporated under the Municipality Authorities Act of 1945 as there is in respect to "*political subdivisions*" in the above quoted provisions of the Act of 1935 P.L. 323, 53 P.S. §§ 5571 and 5572 to file a petition for relief under Chapter 9 of the Bankruptcy Act, although the legislature showed it knew how to limit such authorities' powers when it so desired in Section 13 of the Act where it provided under the caption "*Limitation of Powers*" the restrictions mandated by the provisions of the United States Constitution that no state shall abrogate the obligations of a private contract that obligations and construction bonds should not be in any way altered until such bonds together with the interest thereon are fully met and discharged (53 P.S. § 316).

Is the North and South Shenango Joint Municipal Authority, the within petitioner, a municipality authorized to become a debtor and obtain a readjustment of its debts under Chapter 9 of the Bankruptcy Act,

and if it is, has it been authorized generally under the state law of the Commonwealth of Pennsylvania to do so with the result that the approval of an authorized Department of the Commonwealth of such petition is not required and the joinder of the Departments of Community Affairs and Environmental Resources in PennBank's Motion to Dismiss immaterial? Is it a "political subdivision" prohibited from seeking such relief by the above quoted Pennsylvania Act of 1935 P.L. 323, 53 P.S. §§ 5571, 5572 without first obtaining the approval of the Pennsylvania Department of Community Affairs?

That the petitioner is a municipality and independent public agency and instrumentality of a state within the meaning of the above quoted Sections 109(c) and 101(29) of the Bankruptcy Code defining the public agencies entitled to file a Chapter 9 petition for debt readjustment, hereinabove quoted, but not a political subdivision prohibited from so doing without first obtaining the approval of the Department of Internal Affairs (now Community Affairs) under Pennsylvania Act of 1953 P.L. 323, 55 P.S. §§ 5571 and 5572 was held by the Supreme Court of Pennsylvania in *Commonwealth v. Erie Metropolitan Transit Authority*, 444 Pa. 345, 281 A.2d 882 (1971), Pomeroy J., (from 281 A.2d 884, 885):

> "This Court has consistently held that municipal authorities are not the creatures, agents or representatives of the municipalities which organize them, but rather are 'independent agencies of the Commonwealth, and part of its sovereignty.' *Whitemarsh Township Authority v. Elwert*, 413 Pa. 329, at 332, 196 A.2d 843 (1964); see also *Simon Appeal*, 408 Pa. 464, 184 A.2d 695 (1962); *Tranter v. Allegheny County Authority*, 316 Pa. 65, 173 A. 289 (1934); *Commonwealth ex rel. McCreary v. Major*, 343 Pa. 355, 22 A.2d 686 (1941); *M. G. Mosites Co. v. Southwestern Penna. Water Authority*, 40 Pa. Dist. & C.R.2d 251 (Fayette Cty. 1966).

> "(Note) 5. Appellant clearly does not fall within the political subdivision exemption contained in the Fuel Tax Act. This term, while not defined in the Act, is clearly elucidated in the Statutory Construction Act in such a way as to exclude a municipal authority. Act of May 28, 1937, P.L. 1019, § 101, 46 P.S. § 601."

While an authority is thus not a "*political subdivision*" required to have a Petition for a debt adjustment under Chapter 9 of the Bankruptcy Act approved by the State Department of Community Affairs, that it is a "*public agency or instrumentality*" of such state under the definitions of those terms in Sections 101(29) and 109 of the Bankruptcy Act quoted supra generally authorized by state law to file such Petition on its own behalf and without such approval appears in addition to the foregoing from the powers of independent and autonomous action conferred upon municipal authorities incorporated under the provisions of the Municipality Authorities Act of 1945 P.L. 382, 53 P.S. § 301 et seq. by the provisions of that Act, viz., inter alia, from 53 P.S. § 306 B.

Authorities are given existence for terms of 50 years and longer if necessary by amendment to their Charters, power to make contracts, to sue and be sued and complain and defend in all courts, to acquire property by purchase, lease or otherwise, and to construct, maintain and operate projects; to execute all instruments for the carrying on of their businesses, to borrow money and accept grants and enter into contracts and other transactions with federal and state agencies and authorities, to have the power of eminent domain, to pledge and encumber their revenues and assets and

> "(n) to do all acts and things necessary or convenient for the promotion of (their businesses) and the general welfare of the (Authorities), and to carry out the powers granted to (them) by this act or any other act";

to assess the costs of construction of sewer and water mains in the manner provided for the exercise of the right of eminent domain against the properties benefited by the front foot rule with the charges therefor constituting liens against said proper-

ties, all without any provision in the Municipality Authorities Act or elsewhere requiring an Authority to submit any of its plans, assessments or other matters to any Department of the Commonwealth for approval or to obtain permission from the Department of Community Affairs or any other State Agency or Department to take any action or prohibiting it therefrom without the approval of such Department: the requirement of the Act of 1935 P.L. 323, Section 1 and 2, 53 P.S. §§ 5571 and 5572 supra that Petitions under Chapter 9 be approved by the Department of Internal (now Community) Affairs applies only to the counties, cities and other policy making units falling within the definition of *"political subdivisions"*, supra, and specifically not to municipal authorities; See *Commonwealth v. Erie Metropolitan Authority,* 444 Pa. 345, 281 A.2d 882 (1971) supra and *In re Municipal Authority of Twp. of Upper St. Clair,* 408 Pa. 464, 184 A.2d 695 (O'Brien, J.) and cases cited in said cases and myriads of other decisions of local and appellate courts of Pennsylvania annotated at 53 P.S. § 302 Note 3 and 53 P.S. § 306 Note 6 all to the effect that municipal authorities are neither accountable to nor dependent for their authority to act on the Commonwealth or any department thereof such as the Department of Community Affairs which is actually an outsider insofar as the conduct of their affairs is concerned; that they are not creatures of the local units of government that created them or of any department of the state government and are amenable to correction only in an appropriate action in the Court of Common Pleas when they act unreasonably or abuse their discretion: *Yezior v. North Fayette County Municipal Authority,* 193 Pa.Super. 271, 164 A.2d 129 (1960) affirming Judge Dumbauld's holding when a Judge of the Court of Common Pleas of Fayette County that a municipal authority

owning and operating a water system acts in a proprietory rather than a governmental capacity and, in the ownership and operation of such facility, stands on the same footing as a private corporation.[4]

The original Municipal Bankruptcy Act of 1934 was held unconstitutional in *Ashton v. Cameron County Water Improvement District No. 1,* 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309 (1936), McReynolds, J., on the ground that the proceeding was a violation of the sovereignty of the states. Mr. Justice Cardozo filed a dissenting opinion in which Chief Justice Hughes and Messrs. Justices Brandeis and Stone joined to the effect that in permitting debt-ridden municipal authorities to make adjustments of their debts on an equitable basis under the approval of the Bankruptcy Court Congress filled a gap in the law because of the constitutional prohibition against the abrogation of contracts under state law, and this reasoning formed the basis of the decision of virtually the same Court in holding the subsequently enacted Municipal Bankruptcy Act of 1937 constitutional in *United States v. Bekins et al., Trustees for Lindsay-Strathmore Irrigation District,* 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1938). Mr. Justice Cardozo's reasoning in his dissenting Opinion in *Ashton* adopted by the Court in *Bekins* was thus stated by the learned Justice at 298 U.S. 513, 533 et seq., 56 S.Ct. 892, 897, 80 L.Ed. 1309:

> "The plight of the debtors was bad enough; that of the creditors was even worse.

> .    .    .    .    .

> "A recalcitrant minority had capacity to block the plan. Nor was there hope for relief from statutes to be enacted by the states. The Constitution prohibits the states from passing any law that will impair the obligation of existing con-

---

4. The Act of 1953, P.L. 323, 53 P.S. §§ 5571, 5572, supra, requiring *"political subdivisions"* to have Chapter 9 Petitions approved by the Department of Community Affairs governs the affairs of the counties, cities, boroughs and other political subdivisions and municipalities defined as *"political subdivisions"* in the Statutory Construction Act, 1 Pa.C.S.A. Section 1991, supra, but not the Municipal Authorities incorporated under the Municipality Authorities Act of 1945 P.L. 382, 53 P.S. § 301 et seq. There is no provision in said Municipality Authorities Act or elsewhere requiring such municipal authorities so incorporated to so proceed.

tracts, and a state insolvency act is of no avail as to obligations of the debtor incurred before its passage. *Sturges v. Crowninshield*, 4 Wheat. 122 [4 L.Ed. 529]. Relief must come from Congress if it is to come from any one.

As said by Hatton W. Sumners in arguing as amicus curiae for the Judiciary Committee of the House of Representatives in *Bekins* at 304 U.S. 29, 58 S.Ct. 811:

"It seems to us that in so far as drainage and irrigation districts are concerned, they have more the characteristics of a railroad corporation than they do of an ordinary municipality. A railroad corporation, by delegation, exercises the right of eminent domain—probably as high a right and power as Government has—yet it does not thereby become a part of the State.

And Chief Justice Hughes in sustaining debt adjustment proceedings of municipalities where debt-ridden authorities were involved during the depths of the depression whose plight was similar to that of the citizens of the Pymatuning resort area who are reluctant to pay sewer charges and assessments until a means of correcting their defectively installed pollution-causing sewer system is in sight (Record at pages 185 thru 188) at 304 U.S. 53, 54, 58 S.Ct. at 816 (*Bekins*):

"Nor did the formation of the indestructible Union of indestructible States make impossible cooperation between the Nation and the States through the exercise of the power of each to the advantage of the people who are citizens of both. We had recent occasion to consider that question in the case of *Steward Machine Co. v. Davis, supra*, [301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279] in relation to the operation of the Social Security Act of August 14, 1935. 49 Stat. 620.

.     .     .     .     .

"In the instant case we have cooperation to provide a remedy for a serious condition in which the States alone were unable to afford relief. Improvement districts, such as the petitioner, were in distress. Economic disaster had made it impossible for them to meet their obligations. As the owners of property within the boundaries of the district could not pay adequate assessments, the power of taxation was useless. The creditors of the district were helpless. The natural and reasonable remedy through composition of the debts of the district was not available under state law by reason of the restriction imposed by the Federal Constitution upon the impairment of contracts by state legislation.

.     .     .     .     .

"We see no ground for the conclusion that the Federal Constitution, in the interest of state sovereignty, has reduced both sovereigns to helplessness in such a case."

The following was said in a critique of the revision of the municipal Bankruptcy legislation similar to and immediately preceding that in Chapter 9 of the Bankruptcy Reform Act of 1978 at pages 568, and 569 of the Harvard Journal on Legislation, Vol. 13:551. et seq. (1976):

"On a constitutional level, these provisions unnecessarily defer to state authority ... Congress could have given the courts a more active role that would have been acceptable to the states."

Nevertheless, Chapter 9 of the Bankruptcy Reform Act of 1978 provides that state sovereignty may not be in any way abrogated or impinged upon. There is no provision for the appointment of a trustee to take over governmental or taxing prerogatives of a state or municipal authority, or even the operation and possession of its property and business as there is in every other Chapter of the Bankruptcy Act, except to take appropriate action to avoid fraudulent and preferential transfers if the debtor fails to do so (Section 926). It is provided also that the court may not interfere with any of the political or governmental powers of the debtor, or the debtor's use or enjoyment of any of its income producing property (Section 904) and that the debtor cannot file a Chapter 9 Petition for adjustment of its debts unless generally authorized by state

law to do so, or in the alternative by a Department of the State empowered to grant such authority (Section 109(c)(2). However, the Congress was sufficiently cognizant of the importance of the relief afforded debtors and creditors in emergent need of such relief as to provide under Section 921(f):

"(f) The court may not, on account of an appeal from an order for relief, delay any proceeding under this chapter in the case in which the appeal is being taken; nor shall any court order a stay of such proceeding pending such appeal."

While not determinative of the legal issues concerning our jurisdiction to entertain this proceeding, it should be noted that the petition filed by the debtor for an adjustment of its debts under Chapter 9 of the Bankruptcy Act would provide more adequate relief to all of the parties involved in this difficult situation than the action of PennBank for the appointment of a Receiver under Section 6 of the Municipality Authorities Act, 53 P.S. Section 308 which is essentially an action of foreclosure by a secured creditor who would be disqualified by its conflict of interest from having a controlling voice or vote in a bankruptcy reorganization or debt readjustment proceeding, especially that of the citizens of the affected area in which raw sewage is on the brink of backing up into their basements through the defectively installed sewers and in which the previously lush vacation areas, wild life preserves and high quality water supply are being polluted and destroyed. The proceeding for a debt readjustment under Chapter 9 of the Bankruptcy Act under the aegis of the citizens who filed the action in the District Court in which the deplorable installations made by the former Board were brought to light and who now comprise the membership of the present Board would be more economical than the receivership action sought by the secured creditor whose rights would be fully protected along with those of all other classes of creditors in such proceeding. The built in protections and advantages of bankruptcy reorganization procedures include a stay of proceedings against the debtor's revenues and assets by other creditors, the power of inquiry into and setting aside when appropriate of transfers of assets found to have been preferential, the conduct of required litigations against negligent contractors and engineers and their sureties in the single forum of the Bankruptcy Court and the transfer to such forum of all such pending actions under our nationwide jurisdiction over all litigations in any way related to a bankruptcy case, and in addition, the working out of an equitable composition of the claims and rights of all classes of creditors which no state court proceeding or receivership has constitutional authority to effect and in which no appeal from our determination of jurisdiction can stay the progress of the proceeding under Section 921(f) of the Bankruptcy Act, supra, with the result that the necessary engineering studies and negotiations for additional funds and grants so emergently needed and urgently ordered by Judge Knox to be considered can be proceeded with and go forward.

IT IS ORDERED, ADJUDGED and DECREED for the foregoing reasons that the Motions of PennBank and the Departments of Community Affairs and Environmental Resources of the Commonwealth of Pennsylvania to dismiss the within petition of the North and South Shenango Joint Municipal Authority for a readjustment of its debts and obligations under Chapter 9 of the Bankruptcy Act be, and the same hereby are, denied and dismissed, and that the Court has full jurisdiction of the debtor's proceeding under Chapter 9 of the Bankruptcy Act; that all of the jurisdictional averments in the debtor's Petition and its Amended Petition are found to have been proven and substantiated and that an Order for Relief is hereby granted the debtor under said Chapter 9.

IT IS FURTHER ORDERED that a status conference of counsel for the parties shall be held within ten (10) days of the date of this Order on the subject of the time table and plans directed to be implemented by the late Judge Knox and concerning the setting of a time within which a

Plan of Readjustment of the Authority's debts and obligations can be proposed.