Whitemarsh Township Authority, Appellant,
*v*. Elwert.

Argued November 22, 1963. Before Bell, C. J., Musmanno, Jones, Cohen, O'Brien and Roberts, JJ.

Anderson Page, with him Michael L. Strong, Elmer L. Menges, Township Solicitor, and Saul, Ewing, Remick & Saul, for appellant.

Richard S. Lowe, with him Fox, Differ, DiGiacomo & Lowe, for appellees.

OPINION BY MR. JUSTICE O'BRIEN, January 21, 1964:

The sole question in this appeal is whether an Authority may adopt simultaneously the so-called "benefit method" and the so-called "foot front method" in the assessment of costs of sewer construction done within the same construction project.

Whitemarsh Township Authority was organized and incorporated by Whitemarsh Township, a township of the second class, pursuant to the Municipality Authorities Act of 1945, P. L. 382, as amended (53 P.S. §301 et seq.), for the purpose of financing, constructing and leasing a sanitary sewage disposal system in the Township of Whitemarsh.

The appellant Authority seeks to assess George Elwert and Lillian Elwert, his wife, appellees, for certain

costs of construction of a sanitary sewer constructed by the Authority which benefited, improved or accommodated their property. The appellees own and reside on their property located at 517 Ridge Pike, in Whitemarsh Township, Montgomery County.

The Authority has constructed a sanitary sewer line in the bed of Ridge Pike, said sewer extending 28 feet along the front of appellees' property.

On April 15, 1958, the Authority adopted a resolution, and presumably took all other necessary legal action, providing for the use of the "foot front method" in the assessment of sewer construction costs for their project. On June 19, 1958, a supplemental resolution of the Authority was adopted which provided in part that ". . . where, in the opinion of the Authority, an assessment by the Front Foot Rule cannot legally be made against, or would not adequately measure the benefit to any property, the cost of construction may be assessed against such property according to the extent of benefits as determined by a Jury of View".

On July 12, 1960, the Authority filed a Municipal Claim in its own name against appellees for $341.22, intending, as evidenced by the averments of paragraph 6 of appellant's reply to new matter, that such claim be based upon the "benefits method." A sci. fa. was issued and appellees filed an affidavit of defense challenging the legality of the assessment and, by way of new matter, averred and admitted, in paragraph 7 thereof, that the amount due from appellees to the Authority was $144.76, as calculated by the foot front rate of $5.17 per foot front, multiplied by the 28 feet of sewered frontage of appellees' property.

Appellees filed a motion for judgment on the pleadings which was granted by the court below, conditioned, however, upon their paying the Authority $144.76, the amount admittedly owed to it. 28 Pa. D. & C. 2d 368 (1961.). The Authority appealed to this

court, which entered an order remitting the appeal to the Superior Court. The Superior Court, by a per curiam order, 199 Pa. Superior Ct. 471, 186 A. 2d 866 (1962), affirmed on the opinion of the court of common pleas; we granted allocatur, on the petition of the Authority.

In order to adjudicate this case properly, one must first understand the true nature of the power of assessment that the Authority in this case has exercised, and, concomitant with this, one must necessarily understand the true nature of Municipality Authorities in Pennsylvania.

In *Simon Appeal,* 408 Pa. 464, 184 A. 2d 695 (1962), we held that Municipality Authorities are not the creatures, agents or representatives of the organizing municipality. Rather, we held, they are independent agencies of the Commonwealth and part of its sovereignty. We further held, that the powers of Municipality Authorities are contained in the Municipality Authorities Act of 1945, Act of May 2, 1945, P. L. 382, as amended, 53 P.S. §301 et seq., and not in the codes granting powers to the various classes of municipalities of the Commonwealth.

The Court of Common Pleas and the Superior Court, by its affirmance, adopted the view that the Authority's powers were limited by the provision of The Second Class Township Code, Act of May 1, 1933, P. L. 103, §1509, as amended, 53 P.S. §66509, which provides: "The charge for any such sewer or drain construction in any township shall be assessed upon the properties accommodated or benefited, in either of the following methods: (a) [Front foot rule]. . . . (b) [Benefits method]. . . . When a township is divided into sewer districts, the assessment in each district may be by different methods." From this statutory provision, the court concluded that the Authority "having created only one sewer district, cannot elect, at its discretion, to apply both methods". We disagree.

This matter must be viewed in the light of the nature of an Authority as an agency of the Commonwealth, not as an appendage of the Township. The Authority's powers of assessment are contained in Section 4B of the Act, 53 P.S. §306B, and are as follows: "(r) To *charge* the cost of construction of any sewer constructed by the Authority against the properties benefited, improved or accommodated thereby to the extent of such benefits. Such benefits shall be assessed *in the manner* provided by section eleven of this act for the exercise of the right of eminent domain.

"(s) To *charge* the cost of construction of any sewer constructed by the Authority against the properties benefited, improved or accommodated thereby according to the foot front rule. Such charges shall be based upon the foot frontage of the properties so benefited, and shall be a lien against such properties. Such charges may be assessed and collected and such liens may be enforced *in the manner* provided by law for the assessment and collection of charges and the enforcement of liens of the municipality in which such Authority is located. Provided, that no such charge shall be assessed unless prior to construction of such sewer the Authority shall have submitted the plan of construction and estimated cost to the municipality in which such project is to be undertaken, and the municipality shall have approved such plan and estimated cost: And provided further, That there shall not be charged against the properties benefited, improved or accommodated thereby an aggregate amount in excess of the estimated cost as approved by the municipality." (Emphasis supplied).

And §11 of said Act (53 P.S. §314) provides, in part as follows: "The right of eminent domain shall be exercised by the Authority *in the manner* provided by law for the exercise of such right by municipalities of the same class, as the municipality by which such Authority was organized.

"In the case of a joint Authority eminent domain shall be exercised by the Authority *in the same manner* as is provided by law for the exercise of such right by municipalities of the same class as the municipality in which the right of eminent domain is to be exercised." (Emphasis supplied).

From the subsections (r) and (s) set out above, it can be seen that the Legislature vested in every authority the right to charge certain costs of construction by the "benefits method" and the "foot front method", the two long known and familiar methods of imposing such charges. In the event the Authority chooses the "benefits method", the charges to be made by the Authority are determined by a jury of view, this being the procedure provided in all municipal codes for eminent domain proceedings. If the Authority chooses the "foot front method", the charges to be made by the Authority are determined by "the plan of construction and estimated cost" that are approved by the municipality. Thus it can be seen that in either event the basis for the charges, and therefore the control, are not within the purview of the Authority. It can also be seen from subsections (r) and (s) recited above, that either or both methods may be used by the Authority and that they both may be used simultaneously on the same project. No restricting words appear, such as are present in The Second Class Township Code; the disjunctive "or", which would restrict the simultaneous use of both methods, is not present. It is now also apparent why the question involving the assessment methods delegated to second class townships in their code is not relevant in this case.

The more recent cases involving assessments in this Court and in the Superior Court have also established clearly certain other fundamental principles of assessments with regard to the Municipality Authorities Act. "When the property is not benefited, our courts have

not hesitated to declare that the assessment could not be sustained. While there is a presumption that a property is benefited by the construction of a sanitary sewer adjacent to it, this presumption may be rebutted . . . . This principle has received recognition recently in Altman v. Philadelphia, 393 Pa. 246, 141 A. 2d 592 . . . ." *U. Moreland-Hatboro J.S.A. v. Pearson,* 190 Pa. Superior Ct. 107, 112, 152 A. 2d 774 (1959). "We think that the legislature was merely giving to the authority (in the Municipality Authorities Act) the two long known and familiar methods of assessment, namely, benefits determined by a jury of view and costs of construction according to the foot front rule, limiting the charge to such cost (cost being footage of sewer actually adjacent to property times foot front charge). If the amount of benefits exceeded the cost, such excess could not be assessed against the property (under the foot front method). If the costs exceeded the benefits, such excess could not be assessed against the property. When the legislature enacted the Act of 1945 and the subsequent amendments, it certainly must have known of the long line of decisions in Pennsylvania interpreting the foot front rule so that the property could not be assessed for a greater portion of the cost of the sewer than its frontage upon the improvement bears to the total frontage of lots thereon." (Parenthetical material supplied). *Wilson v. Upper Moreland-Hatboro Joint Sewer Authority,* 183 Pa. Superior Ct. 588, 594, 132 A. 2d 909 (1957), affirmed 392 Pa. 245, 140 A. 2d 450 (1958). "To adopt the Appellant's contention (that its lien may be sustained even though the property was not benefited, improved or accommodated by the sewer) would render meaningless the language 'against the properties benefited, improved or accommodated thereby' in the Municipality Authorities Act of May 2, 1945. Every law shall be construed, if possible, to give effect to all its

provisions: Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 P.S. §551." (Parenthetical material supplied). *U. Moreland-Hatboro J.S.A. v. Pearson,* supra, at page 114. The foot front method of apportionment is but a practical substitute for an actual assessment by a jury of view. It is not a principle of taxation but is merely a convenient method of practical adjustment of proportional benefits and it is allowable only because it practically arrives at a correct result in adjusting the burden according to the benefits. An application thereof which does not reflect an assessment according to benefits is in excess of legislative power. *U. Moreland-Hatboro J.S.A. v. Pearson,* supra; *Spring Garden Township v. Logan,* 149 Pa. Superior Ct. 580, 27 A. 2d 419 (1942); *Harrisburg v. McPherron,* 14 Pa. Superior Ct. 473 (1900). From these cases it can be seen that the controlling language followed by this Court and the Superior Court has been that which is contained in the Municipality Authorities Act. This is in conformity with the established proposition that an Authority is the agent of the State and not the child of the incorporating municipality.

We said in *Simon Appeal,* supra, page 472: "The phrase 'in the manner' appearing in subsection (s) merely indicates that procedural rules set forth in the code of the local municipality are to be followed, but does not dictate that the substantive law governing the local municipality must be controlling. The substantive law governing the charges made by an Authority is contained in the right given to it by the Legislature, its parent body, in the empowering statute, the Municipality Authorities Act." The only procedural rule that is of revelance in The Second Class Township Code, Act of May 1, 1933, P. L. 103, §1509, and amendments (53 P.S. §66509), is the direction in subparagraph (a) that foot front assessments shall be made pursuant to

a resolution or ordinance of the board of supervisors; in other words, under the Authorities Act, by a resolution of the Authority. Subparagraph (b) and the other subparagraphs dealing with sewer districts deal with substantive law that is restrictive of second class townships but has no application to an Authority, which derives its powers from its own creating statute. In this connection, reference is made to the opinion of Mr. Justice LINN in *Hencken v. Bethlehem Municipal Water Authority*, 364 Pa. 408, 72 A. 2d 264 (1950), where he indicated that the authority for an extra-territorial eminent domain case was §11 of the Act of 1945, although the actual procedure of the litigation was conducted *in the manner* provided by the applicable provisions of The Third Class City Law.

Returning now to the case at bar and keeping in mind the principles previously stated herein, it is now readily apparent that the controlling case in this issue is *Wilson v. Upper Moreland-Hatboro Authority*, supra, wherein the Superior Court stated, at page 595, in language approved by this court in its affirmance: "We have no doubt that appellants' property has been benefited by this sewer. They have been actually using it and should pay a fair proportion of its cost, measured by benefits to their property. This could have been done by using the jury of view method of assessing the benefits. Whether it is too late for this to be done at this time, we do not have to decide."

In the instant case, the Whitemarsh Township Authority was apparently aware of or anticipated this Court's position in cases where the foot front rule, due to the nature of the frontage of the property, was not an adequate measurement of the fair proportions of the cost of constructing the sewer in question. In its resolution of June 19, 1958, the Authority recognized the principle set forth in the *Wilson* case. We must assume that the Authority has exercised its right to

choose the method of assessment under the Authorities Act in good faith and has not done so in a purely arbitrary and capricious manner. There is a factual presumption that municipal officers are properly acting for the public good. *Parker v. Philadelphia,* 391 Pa. 242, 137 A. 2d 343 (1958); *Downing v. Erie City School District,* 360 Pa. 29, 61 A. 2d 133 (1948); *Gericke v. Philadelphia,* 353 Pa. 60, 44 A. 2d 233 (1945). This is a matter of balancing the equities between one property owner and the remainder of the property owners also serviced by the sewer system. If the appellees in this case do not pay their fair share of the cost of constructing this sewer, the remaining property owners must necessarily pay more than their fair share; if not in the form of assessment, then ultimately in the form of sewer service charges which will and must pay for the sewer system. It should be noted that insufficient facts are here presented to draw any conclusion as to whether or not the appellees' property has been benefited to an extent in excess of the cost as determined under the foot front rule, but this will ultimately be determined in the proper manner by a jury of view.

We cannot sustain the assessment made by the Authority since the procedure required by statute was not followed, inasmuch as a jury of view did not fix it. We must, therefore, remand the matter to the court of common pleas for further proceedings.

Judgment reversed, and case remanded to the Court of Common Pleas of Montgomery County, with directions to appoint a jury of view, upon proper petition of the appellant, in accordance with the authority of subparagraph (r) of Section 4B of the Municipality Authorities Act to determine the proper assessment to be charged against appellee's property.

Mr. Chief Justice BELL and Mr. Justice JONES dissent.