## Bloomsburg Municipal Authority, Appellant, v. Bloomsburg Cooperative Canners, Inc., Appellant.

Argued December 9, 1963.   Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Donald A. Lewis,* for Municipal Authority.

*Hervey B. Smith,* with him *Francis B. Haas, Jr.,* and *McNees, Wallace & Nurick,* and *Smith, Eves and Keller,* for property owner.

OPINION BY FLOOD, J., April 14, 1964:

The Bloomsburg Municipal Authority fixed a sewer rental for industrial sewage of the Bloomsburg Co-operative Canners, Inc. The rental is made up of three elements: (1) a basic charge computed upon 85% (advanced in 1960 to 95%) of all metered water entering the plant; (2) a surcharge of 100% (reduced in 1960 to 65%) of the basic charge because of certain material particularly difficult for the authority's plant to dispose of; and (3) a standby charge of 50% of the total rental charged for the highest quarter of the fiscal year for any quarter in which the rental otherwise falls below this amount. Upon appeal by the cannery, the court of common pleas (1) reduced the basic charge from 95% to 65% of water consumption; (2) reduced the surcharge from 100% to 65% not only prospectively but also retroactively to 1958; and (3) reduced the standby charge from 50% to 5% of the total billing for

the highest quarter of the previous fiscal year. Both parties have appealed.[1]

The authority derives its powers directly from the Municipality Authorities Act of May 2, 1945, P. L. 382, as amended (53 PS §301 et seq.). *Whitemarsh Township Authority v. Elwert*, 413 Pa. 329, 196 A. 2d 843 (1964). Under §4B(h) of that act (53 PS §306B(H)), the authority has the power to fix "reasonable and uniform rates to be determined exclusively by it", and the burden of proof as to the impropriety of the rates charged is upon the rate-payer (See *Rankin v. Chester Municipal Authority*, 165 Pa. Superior Ct. 438, 68 A. 2d 458 (1949)).

I. The authority originally based the cannery's sewer rate upon 85% of the metered water entering the plant, but in 1961 it increased this rate from 85% to 95% when, at the same time, it decreased the surcharge from 100% to 65%. In the absence of a showing of special circumstances, such as the fact that a substantial part of the metered water entering the plant did not reach the sewage system or that a substantial amount of unmetered water was entering the system, a percentage of metered water consumption as determined by the authority is a proper basis for sewer rates. *Philadelphia Petition*, 343 Pa. 47, 21 A. 2d 876 (1941).

At the time of the increase of the base rate the authority had in its possession cannery figures showing that more than 27% of water consumption did not reach the sewerline. On this evidence, a holding that a basic charge premised on 95% of water consumption is unjustified is a proper exercise of the discretion of the court below. If believed, the testimony would war-

---

[1] The appeals from the decree in the equity action brought by the cannery and the judgment in the sci. fa. proceeding of the authority were argued together and are both disposed of in this opinion.

rant a reduction to at least 73% of metered water consumption, and, in view of the evidence that charges to other industrial patrons were based upon less than 50% of metered water consumption, we find no abuse of discretion in its conclusion that the basis on which the cannery was charged was discriminatory. We, therefore, cannot say that the court was unwarranted in determining that 65% of water consumption was a proper figure upon which to calculate the basic charge. While there was evidence that the cannery used some unmetered well-water, some of which then entered the sewage system, there was also evidence that other industrial users did likewise. There is no indication that the court did not take this into consideration in concluding that under the circumstances the proper figure should not be higher than 65%.

II. After reviewing the conflicting testimony as to the nature of the cannery's waste products entering the sewage system, the court below concluded that the authority's special classification of the cannery's waste was not arbitrary and that its establishment of a 65% surcharge in 1961 was not improper. We find no abuse of discretion.

In addition, it found that there was no substantial change in the character of the cannery's sewage since it installed a sewage filtering plant in 1956 and the 100% surcharge between 1956 and 1961 was, consequently, unreasonable and should have been adjusted when demand was made by the cannery. As a result, it allowed a credit based on an excess charge of 35% from 1956 to 1961. The authority objected to the retroactive reduction on the ground that the cannery was guilty of laches. We agree with the court below that the cannery constantly pressed its contention upon the authority and that its actions in regard to the matter belied any allegation of undue delay or acquiescence. Under the evidence the claim of laches is not justified.

The record also supports the conclusion that the surcharge should not be further reduced. According to the testimony of the authority's expert, which the court could properly accept, the surcharge is based on B.O.D. (Bio-chemical Oxygen Demand) alone. The court was, therefore, under no obligation to consider other factors, such as suspended solids, which the authority indicated were not considered by it in fixing the surcharge.

The authority's rate resolution provides that the base charge shall be increased by 5/100 of 1% for each part per million by which the average five-day B.O.D. exceeds 200 parts per million during the period of maximum production. The authority's engineer concluded that there was a net B.O.D. of 1500 parts per million in the cannery's sewage. This was an excess over the base amount of approximately 1300 parts per million, resulting in a surcharge of 65%. This surcharge is unexceptionable unless the formula was improper or the engineers were incorrect as to the effect and extent of the B.O.D. of the cannery's sewage.

There was no contrary testimony as to the propriety of the formula. However, there was a distinct conflict among the experts as to the effect and extent of the B.O.D. The court apparently refused to accept the testimony of Mr. Greenlund, a professional engineer called by the cannery, that the effect was not such as to place an additional burden on the authority's primary treatment plant and that the B.O.D. was less than the authority had determined. The court had the right to reject this testimony and accept that of Mr. Gerber, an engineer called by the authority, as to the high B.O.D. of the cannery's waste and the burden it placed on the sewage system.

III. Nor did the court abuse its discretion in reducing the standby charge from 50% to 5%. Included among its findings were the following:

(1)   The cannery is the only industrial patron of the authority with a seasonal business involving one exceedingly active quarter and little or no business during the remainder of the year, with the result that it is the only industry in the community where the quarterly minimum equal to 50% of the peak quarter is such an obvious hardship.

(2)   The more business the cannery does during the peak season, the higher is its rental in the off-season even though there is no evidence that it makes more off-season use of the facilities in the busy years than in slack years.   Thus in 1956-7 the off-season sewer rental was $606.45 per quarter, while in 1961-2, when the cannery did much more business in the peak season but made no more use of the sewer system in the off-season, rental for the off-season quarters was $2,642.16—over four times as much as for the earlier year.

3.   No extra help is required to operate the sewer system during the canning season.

4.   There is a greater volume of flow in the system during wet weather than during the canning season, the B.O.D. is almost constant throughout the year and there is only a slight rise in suspended solids during the canning season.   Filter operation and chlorination remain almost constant throughout the year.

We conclude that the court did not act arbitrarily or capriciously in reducing the standby charge but with mature deliberation and after full consideration of the facts and interests involved.   We cannot find that it has abused the power of review reposed in it by the legislature to determine the reasonableness and uniformity of any rate fixed by the authority.   Act of May 2, 1945, P. L. 382, §4(h), as amended (53 PS §306(h)).

The decree, entered in the court below as of January Term 1962, No. 1, and the judgment entered in the

court below as of March Term 1961, No. 30 (Sci. fa. sur Municipal Claim, January Term 1962) are affirmed.