## Falls Township Authority
## v. Penn Park, Inc.

*Curtin & Heefner,* for plaintiff.
*Leonard B. Sokolow,* for defendant.

GARB, J., June 5, 1972.—We have before us for

disposition two matters relating to the same parties. The first of these is an action by the Township of Falls Authority as in the nature of a writ of scire facias to enforce a municipal claim under and pursuant to the Act of April 17, 1945, P. L. 248, sec. 1, 53 PS §7101, et seq., and the other an action in the court of common pleas of this county brought under and pursuant to the Municipality Authorities Act of May 2, 1945, P. L. 382, sec. 1, 53 PS §301, et seq. In both cases, the question involved is the same, to wit, the reasonableness of the rates charged by the municipal authority for water sold and furnished to defendant, an apartment owner, as well as the reasonableness and perhaps the legality of the penalty imposed for the alleged nonpayment of the said water bills.[1] In both cases, the amounts of the actual bills rendered and the amount of the penalty are agreed upon but the reasonableness of both is contested.

The action in the court of common pleas was originally instituted as an action in equity for the purpose of effecting a rescission or reformation of a certain contract entered into between the authority and the property owner. Upon preliminary objections having been filed by the authority to the complaint this court did, by opinion and order, sustain the preliminary objections, denying as a matter of law the requested rescission or reformation of the contract, but to the extent that the complaint constituted an attack upon the reasonableness of the rates charged and the penalties imposed thereupon, certify the case to the law side of the court. See Penn Park, Inc. v. Falls Township Authority, 19 Bucks 595 (1970).

By virtue of the provisions of the Act of October 7,

---

[1] Although sewer rates have likewise remained unpaid and are, therefore, the subject of a municipal lien, they are not in contest in either of these actions before us.

1955, P. L.671, sec. 1, subsection B(h), 53 PS §306, B(h), any person questioning the reasonableness or uniformity of any rate charged by any authority may bring suit against the authority in the court of common pleas of the county wherein the project is located and the court of common pleas shall have exclusive jurisdiction to determine all questions involving rates for service. Thus it is established that jurisdiction for an attack upon the reasonableness of the rates charged by a municipal authority shall be in the court of common pleas on the law side of the court: Calabrese v. Collier Township Municipal Authority, 430 Pa. 289 (1968) and Yezioro v. North Fayette County Municipal Authority, 193 Pa. Superior Ct. 271 (1960). In an attack upon the reasonableness of the rates charged by the municipal authority under and pursuant to the foregoing Act of Assembly the burden of proof is upon the rate-payer asserting the unreasonableness of the rates charged: Bloomsburg Municipal Authority v. Bloomsburg Cooperative Canners, Inc., 203 Pa. Superior Ct. 393 (1964).

In the course of the abbreviated hearing before us the president of defendant corporation, its sole witness, testified that in his opinion the rates were excessive and, further, that the rates, being flat rates rather than metered rates, did not take into consideration the vacancy factor in his apartment development. However, it was his testimony that his experience to date had been that the vacancy factor was extremely low; and although his prediction was that the vacancy factor would rise in the future, he gave no facts to substantiate such a prediction. On the other hand, the consulting engineer engaged by the authority testified that in his opinion the rates were reasonable and uniform and fixed in such a way as to permit the authority to pay its debt service obligation and other

costs of operation. Section B(h) of the Act of October 7, 1955, the act under which this action is brought, provides that the fixing and collecting of rates and other charges in the area served by the authority at reasonable and uniform rates shall be determined exclusively by the authority for the purpose of providing for the payment of the expenses of the authority, the construction, the improvement, repair, maintenance and operation of the facilities and properties, as well as the payment of the principal of and interest of its obligations, and to fulfill the terms and provisions of any agreements made with the purchasers or holders of any such obligation. Clearly, the testimony of the authority's engineer demonstrated that the rates were fixed in a manner prescribed by law and at such levels as to meet the obligations of the authority, and plaintiff, therefore, has utterly failed in its burden of proof. Although the rates charged are flat rates rather than meter readings that does not constitute an impediment to the reasonableness of the rates charged and, in fact, that is an appropriate manner of charging for the furnishing of water by an authority: East Taylor Municipal Authority v. Finnigan, 202 Pa. Superior Ct. 335 (1963) and Central Iron & Steel Co. v. Harrisburg, 271 Pa. 340 (1921). With regard to the penalty charged it was proven that the penalties imposed are on a sliding scale from five percent to a maximum of 25 percent for the period of time during which the billings remain unpaid. We have no basis upon which to find that these penalties are unreasonable as a matter of law and there is no evidence upon which we can find that they are unreasonable as a question of fact. Therefore we hold that plaintiff has failed to bear its burden of proving that either the rates or the penalties are unreasonable.

The property owner contends additionally that the penalties are unlawful, citing the Act of March 11, 1959, P. L. 4, sec. 1, as amended, 53 PS §7203, which provides as follows:

"From and after the passage of this act any municipality or township of this Commonwealth shall have the right to impose a penalty, not exceeding five per centum, for failure to pay any municipal assessment which remains unpaid for ninety days after the assessment shall have been levied. Such penalty shall be added to the assessment and included in the amount for which the municipal lien is filed for such unpaid assessment."

The term "municipality" is defined in the definition section of the Municipal Claims Act of April 17, 1945, P. L. 248, sec. 1, 53 PS §7101, as any county, city, borough, incorporated town, township, school district, county institution district, and a body politic and corporate created as a Municipal Authority pursuant to law. By the terms of the foregoing act a "municipal claim" for which a municipal lien may be imposed includes, inter alia, a claim filed to recover for water rates. Therefore, under the Municipal Claims Act a municipal authority may secure a municipal lien for nonpayment of water rates: East Taylor Municipal Authority v. Finnigan, supra; Girard Trust Corn Exchange Bank v. Ermilio, 178 Pa. Superior Ct. 316 (1955); and Boro. of Oakdale v. Knepper, 96 Pa. Superior Ct. 517 (1929). The narrow question for disposition, therefore, is whether the limitation of five percent upon a penalty as set forth in the Act of March 11, 1959 relating to a failure to pay any "municipal assessment" applies to the penalty imposed upon the failure to pay water rates.

The word "assessment" is often used to mean the

preliminary valuation of the subject matter of a tax by a board of assessors: Hart's Appeal, 131 Pa. Superior Ct. 104 (1938). In matters of taxation, the word "assessment" is generally used to designate the amount to be paid into the public treasury as a part of the benefit specially received by reason of some local improvement, such as the charges imposed for the installation of sewers, water pipes, paving, sidewalks, curbs and the like: Philadelphia v. Philadelphia Transportation Company, 345 Pa. 244 (1942). An assessment is a valuation of property for the purpose of taxation. It is a phase in the whole process of taxation. While it usually applies to the valuation of property for the purpose of raising revenue for the general welfare, it may apply specifically to pay for special benefits, as in the case of sewer or water lines constructed: Meadville City v. Odd Fellows' Home of Western Pennsylvania, 128 Pa. Superior Ct. 180 (1937). Therefore, the term assessment has traditionally been applied to a general tax imposed by a municipality for the purpose of raising revenue for the general good or for the purpose of paying for specific improvements in which case it is generally imposed upon the specific property benefited. However, water and sewer systems are proprietary in nature regardless of whether they are owned and operated by the municipality itself or by an authority created by the municipality. The operator of the water or sewer system stands on the same footing as a private entrepreneur selling a product. The charges are not taxes or substitutes for taxes but rather a charge for a product or service, that being either water or sewerage: Hamilton's Appeal, 340 Pa. 17 (1940).

Therefore, at least traditionally, it must be noted that there is a distinction between an assessment as

applied to the collection of taxes or municipal improvements and rates charged for services or products such as sewerage treatment and water. It is of more than passing significance that this distinction is apparently recognized in the Municipal Claims Act wherein the term "municipal claim" is defined. As previously noted the claim to recover for water rates is included. Additionally, included as "municipal claims" is "the claim arising out of, or resulting from, a tax *assessed*" as well as "for *assessments* for benefits in the opening, widening or vacation" for grading, curbing, recurbing, paving, repaving, constructing or repairing the footways of any public highway. Thus it is apparent that the legislature, in defining municipal claims, described such matters as general taxation or specific improvements as costs which are assessed to the property owner, but did not apply that term of reference to such matters as water rates, lighting rates or sewer rates. Therefore, we must assume that the legislature recognized the distinction as set forth in the cases hereinbefore cited. We must presume that the term "municipal assessment" as used in the Act of March 11, 1959, is a term of art, and assessment applies in the traditional sense as relating to a tax imposed or the cost of municipal improvements. Therefore we hold that the five percent restriction as created by this act does not apply to the rates charged by a municipal authority for the use of water.

No legal authority has been brought to our attention nor has our independent research discovered any holding that a municipal authority may not impose a penalty for failure to pay for the services rendered. In fact, we understand it to be the contention of the property owner not that a penalty may not be charged but rather that it may not exceed five percent. The

Municipal Authorities Act in section B(h) of section 1, 53 PS §306B(h), provides that the authority shall fix, alter, charge and collect rates *and other charges* in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it. In the absence of any law to the contrary we construe this to mean that a municipal authority may impose penalties for the failure to pay for the services rendered. There being no showing that the penalties as imposed in this case are either unreasonable or nonuniform we must therefore hold that they are lawful.

By virtue of the foregoing it should be obvious that the action in the court of common pleas as of January term, 1969, no. 1834, attacking the reasonableness of the rates and the penalty must be decided in favor of defendant authority and a judgment rendered in its favor. Likewise in the action on the writ of scire facias sur municipal claim a judgment must be rendered in favor of the authority and against the property owner in the amount of the claim. Accordingly, we enter the following

## ORDER

And now, to wit, this June 5, 1972, in action January term, 1969, no. 1834, it is hereby ordered, directed and decreed that judgment be entered in favor of defendant.

## ORDER

And now, to wit, this June 5, 1972, in action January term, 1969, no. 2159, judgment is hereby rendered in favor of plaintiff and against defendant in the sum of $7,277.18 with interest from March 31, 1968.