Trux Realty Company, Inc. *v.* Cranberry Municipal Sewer & Water Authority.

Argued March 6, 1973, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*William C. Robinson,* with him *Henninger & Robinson,* for appellant.

*W. Theodore Brooks*, with him *Reding, Blackstone, Rea & Sell*, for appellee.

OPINION BY JUDGE ROGERS, April 4, 1973:

Trux Realty Company, Inc. appeals from an order of the Court of Common Pleas of Butler County dismissing its petition to strike a judgment entered against it in that court.

It is necessary to state carefully the facts from which the result here naturally flows. The Municipal Sewer and Water Authority of Cranberry Township was created by Cranberry Township, Butler County, a Second Class Township, pursuant to the Municipality Authorities Act of 1945, Act of May 2, 1945, P. L. 382, as amended, 53 P.S. §301 et seq. It embarked on a program to sewer an area called the "Industrial Park Area" which it completed sometime prior to December 1967. It was necessary to acquire rights-of-way through seven private properties, a portion of one of which Trux subsequently acquired. Three of the required rights-of-way, including that through Trux's predecessor, were obtained by grant, the remaining four were condemned by declaration of taking pursuant to the Eminent Domain Code, Act of June 22, 1964, P. L. 84, 26 P.S. §1-101 et seq. The Authority determined that the costs of the sewer should be assessed by the benefits method.

The Authority filed a separate declaration of taking with respect to each of the four properties through which rights-of-way were required to be condemned, each of which proceedings was given a term and number. The Authority then filed a petition for the appointment of viewers "to determine the assessable cost of construction of the said sewers including any damages . . . to balance damages against the benefits and to assess or award the excess of one over the other against the properties benefited." The seven properties

through which rights-of-way were required are mentioned in the body of the petition with appropriate reference to the place of recording of the three agreements or by appearance docket numbers in the case of the four condemnations. This petition appears to have been filed in early 1968. The petition was assigned its own docket number and the docket numbers of the four declarations of taking are never again referred to in the proceedings. The jury of view then appointed did not file a report until January 22, 1970, two years after its appointment. During that interval, in November 1969, Trux purchased a part of one of the properties, through which a right-of-way had been acquired, for a recited consideration in excess of $65,000.

The jury's report assessed benefits against 21 properties, including that of Trux's predecessor. The court below directed the jury's report to be filed and ordered its absolute confirmation unless exceptions should be filed within thirty days. Several of the property owners, not including Trux's predecessor, as well as the Authority filed what they denominate "Appeals" from the jury of view report.

At this point, it is necessary to advert to the provisions of The Second Class Township Code, Act of May 1, 1933, P. L. 103, reenacted by the Act of July 10, 1947, P. L. 1481, 53 P.S. §65101 et seq.[1] Section 15 of the Act of July 10, 1947, 53 P.S. §66035, provides that when exceptions are filed to the viewers' report, the court may ". . . confirm, modify, or change the same, or change the assessments made therein, or refer it back

---

[1] The *procedure* for assessing by the benefit method in the case of properties not condemned is that provided by the statute relating to the municipality which created the Authority. Sections 4(B) (r) and 11 of the Municipality Authorities Act of 1945, 53 P.S. §§306 (B)(r) and 314. *Whitemarsh Twp. Authority v. Elwert*, 413 Pa. 329, 196 A. 2d 843 (1964).

to the same or new viewers." The court below did none of these things. Instead, it treated the so-called appeals from the viewers' reports as appeals taken pursuant to Section 516 of the Eminent Domain Code, 26 P.S. §1-516, and proceeded to a non-jury trial, at the conclusion of which it made its own determination, in almost each case different from the jury's, of the amounts to be paid on account of the benefits to each of the 21 properties, including the property of which Trux then owned a part. This order was made April 21, 1971, and does not mention Trux. No exceptions were filed as allowed by Pa. R. C. P. No. 1038 in the case of non-jury trials and the court made a final order on July 7, 1971, assessing benefits, *inter alia,* in the amount of $5640 against a property denominated V-10. Trux's name as an owner of V-10 is recited in this order for the first time in the proceedings. It is the judgment upon this order which Trux sought to have stricken and which is appealed here.

We first note that no municipal claim for the benefits conferred upon any property in the project was ever filed under the Act of May 16, 1923, P. L. 207, as amended, 53 P.S. §7101 et seq. Section 9 of that Act, 53 P.S. §7143, provides that in order for the lien of a municipal claim to attach from the time the improvement is completed,[2] a claim in the form provided by Section 10 of the same Act, 53 P.S. §7144, should be filed ". . . within six months after confirmation by the court, where confirmation is required. . . ." Here, not only was no claim filed, the viewers' report was never confirmed; it was instead entirely supplanted by the court's award after a trial *de novo* pursuant to the Eminent Domain Code.

_____

[2] The Act of September 23, 1959, P. L. 955, as amended, 53 P.S. §7432, validates claims filed late, without, however, reattachment of the lien against real estate transferred before such late filing.

The only legal authority for the judgment here attacked advanced by the appellee and the court below is that of Section 606 of the Eminent Domain Code, 26 P.S. §1-606, as follows: "In determining the fair market value of *the remaining property after a partial taking,* consideration shall be given to the use to which *the property condemned* is to be put and the damages or benefits specially affecting *the remaining property* due to its proximity to the improvement for which the property was taken. Future damages and general benefits which will affect the entire community beyond the properties directly abutting the property taken shall not be considered in arriving at the after value. Special benefits to *the remaining property* shall in no event exceed the total damages except in such cases where the *condemnor* is authorized under existing law, to make special assessments for benefits." (Emphasis supplied.) It is contended that although there was no condemnation of the property of which Trux now owns a portion, special benefits may be assessed, judgment entered, and a lien thus effectively obtained, because condemnations of rights-of-way across other properties in the same project had occurred.[3] Such a construction of Section 606 requires utter disregard of the fact that the section speaks of "remaining property after a partial taking" and "the property condemned" and that in the last sentence, where reference is made to special benefits, the word "condemnor" appears. There was no partial taking, no property condemned and no condemnor with respect to the property of Trux or its predecessor. Further, the Comment of the Joint State Government Commission contains specific limitation applicable to the circumstances here: "This act is not intended to supersede or otherwise affect those statutes

---

[3] As we have noted, there were condemnations of rights-of-way over only four of the 21 properties found to be benefited.

which authorize the assessment of benefits covering the cost of public improvements, such as sewers, or the method of assessing them, except where a condemnation cognizable under this act accompanies the installation of the assessable improvement, in which case the entire proceeding is intended to be under this act and such benefits may be assessed as provided in the last sentence of this section." It is clear to us that the Commission, consistent with the Code, refers only to particular properties which have been condemned and to the installation of an assessable improvement benefiting properties condemned.

The Authority here could have obtained a lien for benefits against the property now owned by Trux by following the procedures of The Second Class Township Code to the point of final confirmation of the jury of view's report and by filing within six months after such confirmation a claim as allowed by the Act of May 16, 1923. Our disapproval of the course here followed has foundation firmer than that of mere insistence upon technical statutory procedures. Section 9 of the Act of May 16, 1923, 53 P.S. §7143, contains the following language which would have been of benefit to Trux under proper procedure: "In case the real estate benefited by the improvement is sold before the municipal claim is filed, the date of completion in said [engineer's] certificate shall determine the liability for the payment of the claim as between buyer and seller. . . ."

We are not called upon to decide whether a lien might not yet be obtained by the Authority pursuant to the proper procedures here indicated. *See In Re: Grading, Paving and Curbing Evergreen Road etc., City of Pittsburgh,* 114 Pa. Superior Ct. 499, 174 A. 804 (1934), and *Wilson v. Upper Moreland-Hatboro Joint Sewer Authority,* 183 Pa. Superior Ct. 588, 132 A. 2d 909 (1957).

Order reversed; and the judgment entered July 9, 1971 to C.P. No. 134 September Term, 1971, Book 169, page 93 in the Court of Common Pleas of Butler County stricken.