Grace **JAILLET**, on behalf of herself and on behalf of all other persons similarly situated and as a derivative action on behalf of Washington Township Sewer Authority

v.

**HILL AND HILL.**

Civ. A. No. 77–70 Erie.

United States District Court,
W. D. Pennsylvania.

Nov. 16, 1978.

Andrew J. Conner, Erie, Pa., for plaintiff.

John M. McLaughlin, James S. Bryan, Erie, Pa., for Hill and Hill.

Edward W. Goebel, Jr., Erie, Pa., for General McClane School Dist.

## OPINION

WEBER, Chief Judge.

The Plaintiff's complaint sets forth two causes of action. The first is tortious, alleging that the Defendant negligently designed a sewer system for the Washington Township Sewer Authority (Authority) and that the Defendant made misrepresentations to the Environmental Protection Agency which resulted in the denial of federal funding. The jurisdiction of the Court over the first claim is based upon diversity of citizenship, 28 U.S.C. § 1332. The second cause of action is statutory and involves the Water Pollution Prevention and Control Act, 33 U.S.C.A. § 1251 *et seq.* (Supp.1978). Each of the Plaintiff's two counts sets out both causes of action. Plaintiff brings the first count on behalf of herself and on behalf of a class of property owners which she claims are individually situated. The second count presents a derivative suit under Fed.R.Civ.P. 23.1 and 23.2 on behalf of the Authority. The General McLane School District has moved to intervene.

The present procedural posture of this case presents the Court with a panoply of issues about jurisdiction, standing, class action certification, and intervention which are raised by the Defendant's multi-faceted Motion to Dismiss. After examining the thorough briefs submitted by both sides, the Court believes that two issues are pivotal and that their resolution leads to the dismissal of the Plaintiff's Complaint.

█ The first issue is whether the Plaintiff states a claim under the Water Pollution Prevention and Control Act upon which relief can be granted. The Act provides that the Federal government may pay 75% of the cost of construction of certain sewage treatment facilities, 33 U.S.C.A.

§ 1282(a). The Plaintiff contends that the Defendant Hill and Hill on or about January 1, 1974 advised the Authority that it was entitled to a grant under the act to cover 75% of the construction costs for the sewage collection system which the Authority was then contemplating. The Plaintiff alleges that the Authority, relying upon the prospect of receiving this federal grant, began construction of the system and that the Defendant misrepresented to the Environmental Protection Agency (EPA) in March or April 1974 certain facts which led the EPA to believe that the Authority was eligible for the grant. At all times, the Plaintiff contends, the Defendant knew or should have known that some of its representations to the EPA and to the Authority were false. The Plaintiff alleges that the EPA relied upon the Defendant's misrepresentations and awarded the Authority a grant of $1,398,300. The EPA later reduced the grant on June 3, 1975 by $408,750 after conducting their own audit of the project. As a result of this grant reduction, the Authority, being contractually committed to the project, was required to secure interim financing and to raise the assessments to recover the loss of federal funds. The Plaintiff is one of several property owners who had to pay the increased assessment estimated at $12.50 per frontal foot of property.

The Plaintiff argues from these facts that the Defendant made misrepresentations to the Authority or to the EPA and that she and other property owners in the vicinity suffered increased assessments as a result. The issue is whether the Plaintiff has a private cause of action against the Defendant under the Water Pollution Prevention and Control Act for the alleged misrepresentations. We have searched the Act and conclude that she does not. Our examination of the statute discloses only one section which expressly grants a private right of action to citizens, 33 U.S.C.A. § 1365, and this section only authorizes suits against governmental bodies or other persons who violate effluent standards which relate to the amount of pollutant which enters a body of water. The Plaintiff makes no such allegation.

Nor can we find an implied cause of action under the Act in the favor of the Plaintiff. The facts of the case as the pleadings present them display a pattern similar to those of other cases in which courts have held that particular federal statutes do not create an implied cause of action for citizens, see, e. g., *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975) (Securities Investor Protection Act does not create a cause of action for customers); *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) (Amtrak Act, 45 U.S.C. § 501 et seq., does not create a private cause of action for railroad passengers); *Carlson v. Coca-Cola Co.*, 483 F.2d 279 (9th Cir. 1973) (Federal Trade Commission Act, 15 U.S.C. § 45, does not create a federal private cause of action for consumers).

Our conclusion that the Plaintiff has no implied cause of action under the Act is firmed by consideration of the criteria set out in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the leading case on the implication of private rights of action in federal statutes. In *Cort* the Supreme Court held that a stockholder of a corporation could not maintain a derivative action in federal district court seeking the return of political contributions made with corporate funds in violation of the Federal Election Campaign Act of 1971, 18 U.S.C. § 610. Applying the four criteria used by the Supreme Court in *Cort* to determine whether a statute grants a plaintiff an implied cause of action, 422 U.S. at 78, 95 S.Ct. 2080, we must conclude that the Water Pollution Prevention and Control Act implies no cause of action in favor of a citizen against engineers who allegedly provide false data to the EPA or to the municipal authority which operates the sewer system which services the citizen's home. In addition, we believe that such actions—sounding as they do of professional malpractice and tortious misrepresentation—have been relegated traditionally to the state courts. Fi-

nally, the right of action which the statute does create in favor of private citizens is so carefully delimited to violations of effluent standards that we are impelled to conclude that Congress did not enact the statute "especially" to protect private citizens from negligence or fraud by private engineers. 422 U.S. at 78, 95 S.Ct. at 2088.

Finding no express or implied cause of action in the Water Pollution Protection and Control Act which would allow the Plaintiff to maintain this action, we must dismiss those allegations of the Complaint which assert jurisdiction and a cause of action based upon the Act.

■ The second pivotal issue is whether the plaintiff's joint tenants with rights of survivorship, Thomas C. and Patricia E. Moore, are indispensable parties under Fed. R.Civ.P. 19. The Defendant moves to dismiss the diversity claims presented in both counts of the complaint on the grounds that the Plaintiff has failed to join indispensable parties and that the joinder of those parties would destroy jurisdiction. The complaint sets out an action by the Plaintiff, a Tennessee resident, as a property owner subject to increased assessments through the tortious conduct of the Defendant, an engineering firm located in Pennsylvania. The Plaintiff, however, owns only an individual one-third interest in her property; Thomas C. and Patricia E. Moore, residents of Pennsylvania, each own an undivided one-third interest. Together, the Plaintiff and the Moores are joint tenants with the right of survivorship.

The Defendant argues that the Moores are indispensable parties under Rule 19 and that their joinder will destroy the diversity jurisdiction of the court and require the dismissal of the Plaintiff's diversity claims. The Plaintiff does not contest that the joinder of the co-tenants will destroy diversity jurisdiction but argues instead that the Moores are not indispensable parties.

Rule 19(a) states in part:

A person . . . whose joinder will not deprive the court of jurisdiction shall be joined as a party if . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest . . . . .

We believe that this excerpt from Rule 19(a) describes the Moores. The basis of the Plaintiff's claim is that the Defendant's tortious conduct increased the sewer assessment of the property which the Plaintiff and the Moores own as joint tenants. The increased assessment is not solely the debt of the Plaintiff. All three joint tenants are jointly and severally liable for the entire and the same assessment. Their failure to pay the assessment may result in a lien on the title of all of them. Consequently, if the Plaintiff has a cause of action against the Defendant for the increased assessment the Moores have a cause of action as well. Because the Moores as joint tenants are in privity with the Plaintiff, the doctrine of *res judicata* would bar the Moores from ever suing the Defendant in their own right if the Plaintiff were to proceed alone to a decision on the merits. The bar would not only extend to every ground or theory of recovery which the Plaintiff actually presented in her suit, but also to every ground or theory of recovery which she could have presented but overlooked, 1B Moore's Federal Practice ¶ 0.410[2] at p. 1163. (Supp.1978). Accordingly, if the Moores do not participate as plaintiff, the application of the doctrine of *res judicata* may bar them from ever having their own day in court against the Defendant. Thus, to allow the Plaintiff to proceed without the Moores could impair their ability to protect their interest in the matter which is co-equal with the Plaintiff.

■ Because the joinder of the Moores under Rule 19(a) would destroy the diversity jurisdiction of this Court, we must turn to Rule 19(b) which requires the Court to determine whether, in the exercise of equity and good conscience, the action should proceed between only the Plaintiff and the Defendant or whether the action should be dismissed for the failure to join an indis-

pensable party. After considering the factors set forth in Rule 19(b), we must conclude that the potential application of *res judicata*, barring the Moores from ever litigating their own claim, constitutes a prejudice of massive proportions. In addition, we note that the Plaintiff has an adequate, available remedy in the state courts if her action here were dismissed. Some courts have considered the adequacy of an alternative remedy the most critical factor in determining whether an action should be dismissed for the failure to join a party with an interest in the action, see, e. g., *Levitt & Sons, Inc. v. Swirnow*, 58 F.R.D. 525 (D.Md. 1973). Because of the potential prejudice to the Moores if the action proceeds without them, and because the Plaintiff has an adequate state court remedy, we declare the Moores indispensable parties to the continuance of the present action in federal court whose non-diversity as Pennsylvania residents would require the dismissal of the plaintiff's diversity action.

■ Even if we found that the Moores were not indispensable parties, we would still be required to dismiss the tort claims of the Plaintiff's action. First, because the Plaintiff's own sewer assessments appear to be substantially less than the $10,000 she could not maintain the diversity action by herself. Second, the Plaintiff cannot maintain her tort claims in a class action on behalf of other property owners subject to the assessment because the Plaintiff has not alleged, and there appears no basis in fact for alleging, that the individual claims of other class members exceed the $10,000 jurisdictional limit, see *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

■ The Plaintiff argues that she should be permitted to aggregate the individual claims of several property owners to satisfy the $10,000 jurisdiction limit. The Plaintiff relies on dicta in *Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) which acknowledges that some courts have allowed aggregation of individual claims where two or more plaintiffs unite to enforce a "single title or right" in which they have a common, undivided interest. However, the Court in *Snyder* held that the claims of several shareholders who sued an insurance company for the same acts of mismanagement could not aggregate their claims. Just as the individual claims of the plaintiffs in *Snyder* could not aggregate their claims under the "single right or title" exception to the rule against aggregation, the Plaintiffs here may not rely on the distinct claims of other property owners to satisfy the jurisdictional limit.

■ The final aspect of the Plaintiff's diversity claim is a derivative action on behalf of the Authority under Fed.R.Civ.P. 23.1 and 23.2. The purpose of derivative actions is to enable shareholders of corporations or members of unincorporated associations to prosecute meritorious causes of action which the corporation or the association refuses to prosecute, see 3B *Moore's Federal Practice* ¶ 23.1–16 at p. 23.1–39 (Supp.1978).

The Authority is a municipal corporation organized under Pennsylvania law by a municipality to provide sewer service for individuals who own property in a particular geographical area. The Authority is not the creature, agency or representative of the municipality which organized it, but rather is an "independent agenc[y] of the Commonwealth and part of its sovereignty," *Whitemarsh Twp. Authority v. Elwert*, 413 Pa. 329, 332, 196 A.2d 843, 845 (1964); *Commonwealth v. Erie Metropolitan Transit Authority*, 444 Pa. 345, 348, 281 A.2d 882 (1971). Its members are individuals appointed by the organizing municipality to serve on the board of the authority, 53 Pa.Stat.Ann. § 303(e) (Purdon 1978), and are considered "public officers," see *Commonwealth ex rel. McCreary v. Major*, 343 Pa. 355, 22 A.2d 686 (1942). The Municipal Authorities Act of 1945, 53 Pa.Stat.Ann. § 301 *et seq.*, specifically defines the "board" of an authority to be its governing body and specifically empowers the organizing municipality to appoint the members of the board whose prescribed terms of office will commence from the date of their appointment. 53 Pa.Stat.Ann. § 309(A)(a).

In view of the rigorous scheme set out in the statute for the appointment, office terms, and meetings of board members, we cannot hold that property owners who pay sewer assessments to the Authority are "members" of the Authority and consequently have standing to prosecute a derivative action under Fed.R.Civ.P. 23.2. In view of Pennsylvania's elaborate statute the relation of property owners to the Authority seems clearly different from that of laborers to a labor union, see *Tunstall v. Brotherhood of Locomotive Firemen and Enginemen*, 148 F.2d 403 (4th Cir. 1945), or that of automobile owners to an association which provides group insurance for ex-servicemen, see *Baer v. United States Services Automobile Ass'n*, 503 F.2d 393 (2d Cir. 1974), or other examples of suits brought on behalf of an unincorporated association by its members. Nor can we analogize the Plaintiff, as a property owner in the affected area, to a corporate shareholder in a derivative action against a third-party in view of the fact that courts have designated authorities as "independent agencies of the Commonwealth and part of its sovereign," *Whitemarsh, Twp. Authority v. Elwert*, 413 Pa. at 332, 196 A.2d at 845. For these reasons, we hold that the Plaintiff is neither a shareholder nor a member of the Authority for purposes of bringing a derivative action on behalf of the Authority against third parties in federal court. To reach any other conclusion would suggest that a bus rider could bring a federal derivative action on behalf of a transit authority for the careless driving of a motorist. We do not believe that the proper application of Fed.R.Civ.P. 23.1 and 23.2 would allow such actions. We believe our holding is fortified by the fact that the Municipal Authority Act creates an express cause of action in favor of bondholders of authorities, 53 Pa. Stat.Ann. § 308, yet limits the standing of a rate payer to suits brought in common pleas court to question the reasonableness or uniformity of any rate fixed by an authority of the adequacy, safety, and reasonableness of the authority's services, 53 Pa.Stat.Ann. § 306(B)(h) (Purdon's Supp.1978).

For the foregoing reasons, we find that this Court does not have the jurisdiction to hear the Plaintiff's case as an individual action or as a class action under 28 U.S.C. § 1332 and that the Plaintiff does not have the requisite standing to bring a diversity action under Fed.R.Civ.P. 23.1 and 23.2. In addition, we find that the Plaintiff has no cause of action, express or implied, under the Water Pollution Prevention and Control Act and that the Court thus lacks federal question jurisdiction under 28 U.S.C. § 1331.